

179 WESTBURY AVENUE, CARLE PLACE, NEW YORK 11514  PHONE (516)334-4500  FAX (516)334-4501  WWW.SOKOLOFFSTERN.COM

LEO DORFMAN
LDORFMAN@SOKOLOFFSTERN.COM

March 18, 2019

**By ECF**
Hon. Nelson S. Román
United States District Court
300 Quarropas Street
White Plains, NY 10601

      Re:    *Congregation of Ridnik, et al., v. Vill. of Airmont, et al.*
               Docket No. 18 Civ. 11533 (NSR) (LMS)

Your Honor:

      We represent the Defendants. We write to request a pre-motion conference in anticipation of moving to dismiss the Complaint for lack of ripeness and for Plaintiffs' failure to state a claim.

      The Village of Airmont respects and supports the right of every resident to practice their faith. Every Village resident is free to pray in their home or anywhere in the Village, without restriction or regulation, just like any other American. And any resident may use their single-occupancy home as a regular gathering space for prayer, a "residential place of worship." That is, of course, so long as the site—its size, fire safety, ingress, egress, bathrooms, parking, etc.—can support the health, safety, and welfare of all who gather there. Vill. Code. §§ 210-12.1(A)–(B). The Village cannot permit its homes to become fire traps or other threats to human well-being.

      The Village Code strikes a balance—"to promote individual constitutional rights to freedom of religion, freedom of assembly and the protection of the health, safety and welfare of its citizens." *Id.* § 210-12.2(A). To ensure a site can safely support regular group gatherings, the Village Code gives residential places of worship the same review process as all other site plan applications, but the Village *also* gives such applicants "priority in the scheduling of agenda items and hearings and in rendering of all decisions." *Id.* § 210-12.1(B)(14). This includes "the placement of residential place of worship applications on the Planning Board or [Community Design Review Committee ("CDRC")] calendar *before any other applications* can be scheduled to be heard by the Planning Board or CDRC." *Id*. In Airmont, by statute, people seeking to use their home for congregational worship go to the front of the governmental land use review line.

      Plaintiffs reject the Village's authority to regulate health and safety in this area. They want to operate residential places of worship—some already do—with none of the process, oversight, or regulation mandated by state and local law. Some have applied to the Village (one proposed to expand his home by nearly *3000 square feet*), but no Plaintiff has seen the process through to the completion. Instead of submitting a complete application and receiving a final decision, or pursuing administrative relief to ripen their claims, Plaintiffs abandoned the process, ran to federal court with premature and baseless claims under the Religious Land Use and Institutionalized

SOKOLOFF STERN LLP

Hon. Nelson S. Román
March 18, 2019
Page 2 of 4

Persons Act ("RLUIPA"), Fair Housing Act ("FHA"), and U.S. and New York State constitutions, issued a press release, and sought to use the case as a fundraiser for a national political agenda.

In their rush to the courthouse, Plaintiffs sue individually (and for punitive damages) *nearly every Village official*, including the Village Attorney, Village Clerk, and Planning Board Clerk. Most of these officials have no involvement whatsoever in Plaintiffs' applications, and Plaintiffs do not claim they do.[1] Whatever the intention—whether to intimidate, get press attention, or something else—this blunderbuss, scorched earth litigation strategy violates both the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and Plaintiffs' obligations under Rule 11.

Plaintiffs' allegations and the documents the Court can consider at this stage show Plaintiffs cannot state a ripe claim against the Village or its officials. The Complaint boils down to these discrete allegations: i) the Village intentionally prolonged its review of Rabbi Ribiat and Rabbi Berger's site plan applications; ii) the Village Attorney prosecuted Rabbi Berger for violating the Code; iii) the Village approved Rabbi Horowitz's application but has not yet issued a certificate of occupancy; iv) the Fire Inspector had Rabbi Cahan move his *sukkah* because it posed a fire safety risk; and v) the Village Board enacted a temporary moratorium on development approvals, which it never enforced against any plaintiff. These allegations cannot support a claim.

The Court should dismiss all claims against the individual Defendants. RLUIPA does not permit individual liability. *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013). And as to all other claims, Defendants are immune from suit. The Village Attorney has absolute prosecutorial immunity for his prosecution of Rabbi Berger's code violations. *Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001). Legislative immunity shields Village Board Members from suit for voting to enact a moratorium[2] and certain zoning code amendments; it attaches to all actions "in the sphere of legitimate legislative activity," *Bogan v. Scott–Harris,* 523 U.S. 44, 54 (1998), regardless of an official's motive or intent. *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007). The remaining officials have qualified immunity. Plaintiffs do not—and cannot—plausibly allege these individuals personally violated *any* constitutional right, much less a clearly established one. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Plaintiffs do not plausibly allege any Defendant personally harbored—much less were substantially motivated by—discriminatory animus. They repeat *ad nauseam* the conclusory claim that each official acted pursuant to "unwritten policy" of anti-Hasidism, but repetition does not make this empty claim plausible. The only other allegations of animus are a finding from over twenty years ago against a long-gone administration, a decade-old DOJ action against a prior administration (which ended with no finding of liability), and an unadjudicated 2018 lawsuit against the current administration filed by the same organization representing Plaintiffs here.

---

[1] Plaintiffs sued 29 individuals. Of these, 20 are never mentioned by name in the Complaint, aside from being identified as Defendants. Plaintiffs sue every member of the Village Zoning Board of Appeals ("ZBA") even though no Plaintiff has ever appeared before the ZBA. Still, Plaintiffs served many Defendants individually. They served some observant Jewish Defendants on the Sabbath. And they filed Defendants' home addresses on ECF.

[2] Plaintiffs' claims relating to the moratorium, which expired in September 2018, are moot.

SOKOLOFF STERN LLP

Hon. Nelson S. Román
March 18, 2019
Page 3 of 4

Plaintiffs' as-applied claims are unripe because they cannot allege "the government charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). "A final decision is a definitive position on the issue that inflicts an actual, concrete injury." *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quotation omitted); *see also Osborne v. Fernandez,* No. 06–CV–4127 (CS) (LMS), 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009) ("The types of injuries claimed by Plaintiffs—delay and bad faith in the processing of their application and loss of desired use of their property—are precisely the types of claimed injuries that require a final decision to become potentially cognizable."). Plaintiffs obtained no final decision and sought no variance.

With no viable as-applied claim, Plaintiffs assert baseless facial challenges to certain provisions of the zoning code. The Court should reject this clear attempt to avoid the case-ending effect of *Williamson. See Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 415–16 (S.D.N.Y. 2017) ("a cursory review of the complaint and plaintiffs' arguments reveals that plaintiffs are challenging the application of the … Law to them. Such challenges are plainly as-applied challenges. Plaintiffs' arguments to the contrary are belied by the fact that their complaint does not plead or explain how or why the [Law] is facially invalid; that is, unconstitutional or illegal *on its face*." (emphasis added)); *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 627 (3d Cir. 2013) ("little would be left of the *Williamson County* finality rule if [courts] relaxed it so that a plaintiff could obtain damages and avoid the obligation to seek a [final decision] altogether by artfully pleading its case as a 'hybrid facial/as-applied' claim as opposed to what [it] really is—an as-applied claim.")

These defects aside, all claims fail as a matter of law. The RLUIPA, First Amendment, and Equal Protection claims fail because Plaintiffs do not and cannot allege the Village completely prohibits residential places of worship, or *sukkot*, or that the Village treated similarly situated comparators better. *See* 42 U.S.C. §§ 2000cc(a)–(b); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *Olivier v. Cty. of Rockland*, 2018 WL 401187, at *8 (S.D.N.Y. Jan. 11, 2018). The Due Process and Equal Protection claims fail for lack of a cognizable property interest. *See Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 304 (S.D.N.Y. 1998).

Plaintiffs' FHA and § 1985 conspiracy claims are nonstarters. No Plaintiff applied for or otherwise sought—much less was denied—housing. And officers of a single corporate entity like the Village are legally incapable of conspiring together, *Hartline v. Gallo*, 546 F.3d 95, 99 (2d Cir. 2008), particularly where, as here, the officers are alleged to be acting within the scope of their employment. *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir. 1978). Also, Plaintiffs' conclusory and general allegations of a conspiracy cannot withstand a motion to dismiss. *See Baptiste v. N.Y.C Transit Auth.*, No. 02 CIV. 6377 (NRB), 2004 WL 626198, at *6 (S.D.N.Y. Mar. 29, 2004). Finally, Plaintiffs' state law claims are redundant of their federal claims. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 482 (S.D.N.Y. 2015).

Thank you for your consideration of this matter.

SOKOLOFF STERN LLP

Hon. Nelson S. Román
March 18, 2019
Page 4 of 4

                                                                Respectfully submitted,

                                                                SOKOLOFF STERN LLP

cc:    All parties by ECF                    Leo Dorfman