**NORTON ROSE FULBRIGHT**

March 22, 2019

Norton Rose Fulbright US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
United States

**VIA FAX & ECF**
Hon. Nelson S. Román
United States District Court
300 Quarropas Street
White Plains, NY 10601

**Stephen C. Dillard**
**Partner**
Direct line +1 713 651 5100
steve.dillard@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246
nortonrosefulbright.com

Re: *Congregation of Ridnik, et. al. v. Village of Airmont, et. al.*,
Case No. 18-cv-11533 (S.D.N.Y. Dec. 10, 2018)

Your Honor,

We represent the Plaintiffs in the above-styled case, and we write in response to the Defendants' letter submitted on March 18, 2019, regarding their request for a conference in anticipation of a motion to dismiss the Complaint ("Defendants' Letter").

Defendants' Letter is wrong on the facts and the law. The utopian village picture Defendants paint of Airmont as a well-meaning and welcoming municipality to all citizens is squarely at odds with the Plaintiffs' shared experience (and also at odds with Airmont's well-known, lengthy history of using zoning to discriminate against Hasidic Jews, as documented in the lawsuits the U.S. Department of Justice has brought against it). Contrary to Defendants' assertions, Hasidic Jews in Airmont are not "free to pray in their home or anywhere in the Village, without restriction or regulation, just like any other American." Defs.' Letter at 1. The exact opposite is true, as detailed throughout 82 pages of the Complaint. In fact, Airmont implicitly admits as much when, in trying to justify its systemic discrimination, it proclaims that it "cannot permit its homes to become fire traps *or other threats to human well-being*." *Id.* (emphasis added). Missing is any explanation for what these cryptic "other threats" may be, thus unintentionally providing the perfect embodiment of the types of vague, ever-changing rules and excuses that Defendants continually give for why Plaintiffs cannot use their homes for corporate worship and prayer. In truth, these "other threats" are simply the Plaintiffs' different lifestyles and religious practices. The scene that Defendants' Letter attempts to set is not reality; rather, Defendants have systematized their laws and policies to substantially burden the Plaintiffs' free exercise of religion within their own homes. But, of course, in a Motion to Dismiss, Defendants' recitation of facts is irrelevant, as all facts in the Complaint are presumed to be true. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013).

The legal arguments Defendants raise are inaccurate and inapposite, and should a motion to dismiss be filed, it should be denied in its entirety. Defendants primarily contend that Plaintiffs have failed to "see[] the process through to the completion" or "submit[] a complete application and receive a final decision," and have instead "r[u]n to federal court with premature

NORTON ROSE FULBRIGHT

March 22, 2019
Page 2

and baseless claims." Defs.' Letter at 1-2.[1] Inventing these facts, Defendants thus argue that without a final decision, Plaintiffs' as-applied claims are unripe, citing *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). This argument fails from both a factual and legal standpoint. The majority of Plaintiffs' as applied claims challenge the 2007 Code. The 2018 Code replaced it but does not include a grandfathering clause and outlines new and different procedures. Defendants have confirmed that Plaintiffs' previously pending applications have been effectively denied by the new Code. In other words, Plaintiffs' numerous applications and denials under the 2007 Code cannot be appealed, and Airmont's prior denials have become *de facto* final decisions by the new Code's enactment. Plaintiffs are told to start over.

Defendants' ripeness argument also fails because, as the Second Circuit has explained, *Williamson County's* "finality requirement is not mechanically applied" and "should be cautiously applied to [RLUIPA] claims." *Murphy v New Milford Zoning Com'n*, 402 F3d 342, 349, 350 (2d Cir. 2005). Before applying *Williamson County* to an RLUIPA case, a court must first ask, "(1) whether [Plaintiffs] experienced an immediate injury as a result of [Defendants'] actions and (2) whether requiring the [Plaintiffs] to pursue additional administrative remedies would further define their alleged injuries." *Id.* at 351. Under these factors, *Williamson County* does not apply here: (1) Plaintiffs have all experienced immediate injury in that they have all been prevented from practicing their religion by praying corporately for years and have sustained tens of thousands of dollars of expenses and fees; and (2) the Village's practice of keeping such administrative proceedings in perpetual limbo shows additional proceedings would not further define Plaintiffs' injury. *See, e.g.*, *Israelite Church of God in Jesus Christ, Inc. v. City of Hackensack*, No. CIV.A. 11-5960 SRC, 2012 WL 3284054, at *1-4 (D.N.J. Aug. 10, 2012) (applying the *Murphy* test to RLUIPA claims and finding that *Williamson County* finality test did not apply where "[a]s a result of the long wait for approval, the [Plaintiff] incurred substantial damages in rent and other costs of the vacant building, as well as professional fees for the variance application" and "the factual record is as developed as it will ever be, with regard to the City and its decision."). Lastly, as the Second Circuit subsequently held, "[A] plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face, or the manipulation of a zoning process out of discriminatory animus to avoid a final decision. In those cases, pursuit of a further administrative decision would do nothing to further define [the] injury, and the claim should not be subject to the application of the Williamson ripeness test." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014).

Defendants' remaining arguments are equally inapposite. Defendants argue that the Court should dismiss Plaintiffs' "baseless facial challenges to certain provisions of the zoning code." Defs.' Letter at 3. But one would be hard-pressed to find a more blatant facial violation of the

---

[1] The characterization of Plaintiffs' arguments as premature despite spending years and tens of thousands of dollars to resolve these matters administratively is particularly insulting, but it is consistent with the Villages' practices identified in the Complaint: slow-walking applicants, changing the rules during the game, bringing in new inspectors, raising new issues, charging more excessive fees, bleeding applicants' assets, and sitting on applications without approving or denying them.

Constitution (as well as the other state and federal laws in the Complaint) than zoning provisions that are literally entitled "Residential Places of Worship" and "Residential Places of Assembly," and which intentionally target a single religious minority community— Hasidic Jews.

Defendants further argue that "all claims fail as a matter of law" because the law requires Plaintiffs to allege that the "Village completely prohibits residential places of worship." Defs.' Letter at 3. That is simply not a correct statement of the law. *See, e.g.*, 42 U.S.C. § 2000cc(a) (RLUIPA); *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, No. 09 CV 5195 DRH ETB, 2012 WL 1392365, at *7 (E.D.N.Y. Apr. 23, 2012) ("[T]o establish a prima facie violation of RLUIPA, a plaintiff must show that the land use regulation at issue as implemented: (1) imposes a substantial burden, (2) on the 'religious exercise, (3) of a person, institution, or assembly") (internal citations omitted).

Defendants then argue that the § 1985 conspiracy claim is a "nonstarter" because "officers of a single corporate entity like the Village are legally incapable of conspiring together." Defs.' Letter at 3. However, where a plaintiff alleges more than a single act of discrimination, as here, the single entity rule does not apply. *Rackin v. Univ. of Pennsylvania*, 386 F. Supp. 992, 1005–06 (E.D. Pa. 1974) ("[Plaintiff] has alleged many continuing instances of discrimination and harassing treatment by the alleged conspirators. Her allegations comprise much more than 'essentially a single act of discrimination by a single business entity'…").

As for the FHA argument, the Court need only look at the case law concerning the same Defendants to find the answer. *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) ("The Fair Housing Act makes it unlawful 'to refuse to sell or rent …or otherwise make unavailable or deny, a dwelling to any person because of…religion.' The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions.") (citing 42 U.S.C. § 3604(a)).

Defendants also argue that they should not be held individually liable because they enjoy varying levels of immunity. Defs.' Letter at 2. Defendants suggest, for instance, that various officials are immune from any claims because they enjoy qualified immunity. This argument is incomplete. "When government officials abuse their offices, action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (internal citations omitted). As such, qualified immunity does not apply to those who knowingly violated the law. *Id.* at 638-39. At all times, Airmont officials have been regularly put on notice, by courts and by the Department of Justice, and *by their own prior consent decrees*, that targeting Hasidic Jewish populations for different treatment due to their religion violates the Constitution and other laws.

Respectfully yours,

*Stephen C. Dillard*

Stephen C. Dillard