

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 30, 2019

**VIA Fax and ECF**
Hon. Nelson Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:   *Congregation of Ridnik* et al. *v. Village of Airmont* et al.,
             No. 18 Civ. 11533 (NSR)

Dear Judge Román:

      The United States of America (or the "Government") submits this Statement of Interest in the above-referenced action, which alleges that Defendants (collectively, the "Village" or "Airmont") are unlawfully discriminating against Plaintiffs' exercise of their religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the U.S. Constitution. As described below, the Government files this submission to address certain representations made by Airmont in support of its pending motion to dismiss. *See* ECF Nos. 46, 49 ("Airmont Br." and "Reply Br."). Namely, the Government wishes to refute any suggestion, either made expressly or by implication, that the United States has previously provided its imprimatur to, or otherwise endorsed the legality of, the 2007 and 2018 amendments to the Airmont zoning code at issue.

      To be clear, the United States offers no opinion as to the merits of Plaintiffs' factual allegations or legal claims at this point in the proceedings. However, the issue of the potential unlawfulness of the 2007 and 2018 amendments were brought to the Government's attention only recently by virtue of the present private lawsuit, and this Office's review of these changes to the Airmont zoning code and their implementation in practice is ongoing. Nevertheless, particularly since Airmont itself has sought to invoke its litigation history with the United States as pertinent to this suit, the Government believes that it is important at this stage for the Court to have a full understanding of the troubled history of Airmont's zoning code, its impact on Hasidic residents, and the numerous legal actions against the Village that have been necessary in the past. Accordingly, this Statement provides an overview of that relevant background, before turning to Airmont's representations in the present motion to dismiss.

## I. Background

### A. Airmont's Incorporation and the First Round of Litigation

The United States first sued Airmont under the Fair Housing Act ("FHA") just months after the Village's creation in 1991 ("*Airmont I*"), "alleging that the Village had been incorporated for the purpose of excluding Orthodox Jews through zoning restrictions on their places of worship," particularly those co-located in private homes. *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 417-19 (2d Cir. 1995) (outlining trial evidence of overtly anti-Hasidic campaign behind drive to incorporate and separate from Town of Ramapo after latter's zoning code allowed home synagogues). After protracted litigation, including a two-month consolidated trial with a privately-brought suit and cross appeals, a jury found, and the Second Circuit affirmed, that "animosity toward Orthodox Jews as a group" had been the impetus behind Airmont's incorporation and the implementation of its zoning code restricting home synagogues. *LeBlanc-Sternberg v. Fletcher*, 104 F.3d 355 (2d Cir. 1996) (unpublished opinion). The Second Circuit also upheld in all respects the equitable remedies imposed by the District Court to ensure Airmont would not interfere in the future with its Hasidic residents' exercise of religion through housing. *Id.*

Among its provisions, the District Court's injunction directed Airmont's zoning code to recognize the category of "residential place of worship," which was defined as "[a]n area located within a residence that is used for the conducting of religious services" and was to "be permitted by right on any day in all residential zones." *United States v. Vill. of Airmont*, 925 F. Supp. 160, 161 (S.D.N.Y. 1996). For a period of five years, Airmont and its officials were also required to report to the Government any proposed changes to the Village's zoning ordinances and any planning board application or meeting related to religious worship. *Id*. at 162. Finally, Airmont was enjoined from "engaging in any conduct having the purpose or effect of perpetuating or promoting religious discrimination or of denying or abridging the right of any person to equal opportunity on account of religion." *Id*. at 161. The District Court later amended its injunction to clarify that the right to operate a residential place of worship was not absolute, and that Airmont was required to make the records of such applications—which, of course, Airmont was required to fairly and duly process—and their dispositions available to the United States. *See Vill. of Airmont v. United States*, No. 98 CIV. 3801 (CM), 1999 WL 123384, at *1 (S.D.N.Y. Feb. 5, 1999).

### B. Airmont's Attempted End-Run Around the Injunction and Subsequent "Test Case" Agreement

In 1999, Airmont proposed changes to its zoning code seeking to curtail residential places of worship in a number of ways, including limiting them to no more than "500 square feet in floor area." *Id*. at *2. After the Government, "understandably suspicious of the Village's motives[,] . . . declined to give its imprimatur," Airmont, instead of abiding by the procedures put in place by the Court following *Airmont I*, brought an improper collateral challenge seeking relief from the injunction from a different judge in this District, who promptly dismissed the action. *Id*. at *4. The Village's proposed amendments were not enacted.

The following year, however, the Government and Airmont agreed that, as a "test case," the Village would be allowed to process a single application for a residential place of worship under a different set of new procedures proposed by Airmont. *See* Ex. A. These proposed

procedures would require any residential place of worship that exceeded 1,400 square feet to obtain site plan approval by the Village's planning board, which was required to render a decision within 62 days of submission of an application. *Id*. The stipulation, entered by Judge McMahon, made clear that this "test case" was undertaken for settlement purposes only, and that nothing therein was to be "construed as requiring either party to accept the terms" of Airmont's proposed procedures on a permanent basis as part of the zoning code. *Id*.[1]

### C. Renewed Litigation Against Airmont in 2005 and Resulting Consent Decree

In 2005, the United States once again sued Airmont, this time under RLUIPA as well as the FHA, alleging that the Village's zoning code was unlawfully prohibiting the operation of Hasidic religious boarding schools, despite allowing other types of land use with similar residential components. *See United States v. Vill. of Airmont*, No. 05 Civ. 5520 (S.D.N.Y. June 10, 2005) ("*Airmont II*"). Following filing of the suit, the parties once again engaged in active communication about the Village's zoning practices, specifically those relating to freestanding places of worship (as opposed to home synagogues), leading to entry of a consent decree in 2011, under which Airmont (1) paid a civil penalty, (2) was prohibited from, *inter alia*, imposing burdens on religious exercise and land use, and, (3) was required to notify the Government of all applications for land use for religious purposes and of any proposed or enacted amendments to the zoning code. *See id*. at Dkt. Nos. 53-55. The consent decree expired in 2015.[2]

### D. The 2007 and 2018 Amendments to Zoning Code and the Present Lawsuit

In 2007, after the expiration of the injunction in place after *Airmont I* but before entry of the consent decree in *Airmont II*—that is, during a period when the Village was not obligated to report proposed changes to the Government—the Village amended its zoning code. *See* Local Law No. 5 of 2007 [ECF No. 45-5]. This amendment implemented, in sum and substance, the proposed procedures that the Government had agreed to in September 2000 only as a "test case" to govern one application for a single home synagogue. In 2018, after expiration of the *Airmont II* consent decree and again during a period when it had no reporting obligation to the Government, the Village further amended its zoning code. *See* Airmont Br. at 18. This most recent amendment was more drastic, striking the review process for residential place of worship added in 2007 altogether from the code, and replacing it with regulation of a new category, "residential places of assembly," defined as a residence where "likeminded people conduct civic, social, or religious activities." Airmont Zoning Code § 210-12.1(B)(2) [ECF No. 45-3].

As before under the 2007 amendment, use of a home synagogue requires planning board approval under the 2018 amendment, but the procedure imposed, under the rubric of "place of assembly," is novel, as are some substantive requirements. Now, an applicant is required first to

---

[1] Although the stipulation was evidently entered by the Court, *see United States v. Vill. of Airmont*, No. 91 Civ. 8453 (CM), Dkt. No. 31, the undersigned was informed by the Clerk's Office that the docketed version, along with other documents from the case, was destroyed as part of routine recordkeeping practices.

[2] As the Court may be aware, a separate private lawsuit is currently pending before Judge Briccetti concerning allegations that Airmont is once again unlawfully restraining operation of a Hasidic boarding school. *See Central UTA of Monsey v. Village of Airmont*, No. 18 Civ. 11103 (S.D.N.Y.) (VB).

3

submit an informal plan to a "Community Design Review Committee" which "may opine as to whether an application is sufficiently complete to go before the Planning Board for formal review." *Id.* § 210-74(A)(1). The zoning code is silent as to what criteria this committee is supposed to apply or what limitations, if any, there are to its discretion to determine that an application is "sufficient" to be advanced to the planning board, nor is there any time period within which the committee must act. *See id.* Moreover, unlike the 2007 code, which required a final decision on an application within 62 days of submission, the 2018 amendment only requires a public hearing within 62 days after an application is deemed formalized (based on the "opinion" of the review committee), and final approval by the planning board within 62 days after the hearing. *Id.* § 210-74(B). The 2018 amendment also imposed a new limitation that the area of assembled worship "shall not exceed the [sic] 40% of the gross floor area of a residence." *Id.* § 210-74(B)(1). It also provided the planning board with new, broad discretion to "impose [any other] conditions as are necessary to ensure conformity" with the zoning code. *Id.* § 210-74(B)(6). Finally, the 2018 amendment imposed for the first time criminal penalties for violations of the zoning code. *Id.* § 210-138.5(C)(4).

## II. Airmont's Mischaracterizations

To the extent that Airmont suggests that the 2007 and 2018 amendments to its zoning code have been subject to previous Government scrutiny and approval, that contention is inaccurate. Specifically, Airmont states that the "federal government agreed to certain proposed amendments" that are "essentially the same as those Plaintiffs challenge now." Airmont Br. at 4. The Government has done no such thing.

First, as described above, and as Airmont notes in passing reference, *id.*, the 2000 stipulation allowed the use of Airmont's proposed application review process only for a single applicant on a test-case basis. Airmont neglects to mention in its brief that the United States expressly disclaimed any future attempt by the Village to "construe[ ]" this stipulation as an agreement by the Government "to accept the terms of the [proposed] Zoning Code Amendments" as a categorical, enacted change. Ex. A at ¶ 4. Yet that interpretation is precisely what Airmont appears to be advancing to the Court by stating, repeatedly and without full context, that the United States somehow "agreed to [the] proposed *amendments to the Zoning Code*" on a permanent basis. Reply Br. at 1 (emphasis added); *see also* Airmont Br. at 4. To the contrary, the zoning provisions at issue in this case were never "federally-vetted and judicially approved," Airmont Br. at 5, beyond an agreement to allow the Village to test a proposed review process in one case; any suggestion that the United States has blessed any formal amendments to Airmont's zoning code are misleading at best.

Moreover, even if the 2007 amendments were substantially similar to the proposed review process contemplated in limited fashion by the 2000 test-case stipulation, Airmont never informed the United States of the adoption of such a permanent change to the zoning code at the time of its enactment or afterwards, nor did it solicit the Government's vetting.[3] To the extent

---

[3] Counsel for the Village recently informed the undersigned that Airmont believes it did notify the United States about the 2007 amendment because, in 2012, Airmont's counsel, in the context of discussions in *Airmont II*, at one point provided the Assistant U.S. Attorney then assigned to the case a link to the entire Airmont Zoning Code online. As Airmont well knows, however, those discussions concerned only the Village's proposed amendments at the time concerning freestanding places of worship, not home synagogues and the 2007 amendment, a subject

4

that it had any doubts about the amendments' propriety (and given the concerns raised for over a decade at that point since the start of *Airmont I*, such doubts should have been obvious) and wished proactively to seek consultation, Airmont could have engaged with the Government. Particularly so because, as noted above, the Village was involved in active litigation with this Office during the period in question about a separate discriminatory zoning practice prohibiting religious schools, which resulted in a 2011 consent decree that once again obliged the Village to report *all* zoning changes. Indeed, (and perhaps indicative of why the Village never raised the amendments now at issue with the Government), this Office expressly advised Airmont on multiple occasions between 2013 and 2015 that other zoning code changes related to freestanding places of worship proposed by the Village may violate RLUIPA. Thus, Airmont's claim that the Government "never challenged or otherwise opposed these the [sic] amendments," *id*. at 6—which were adopted in 2007 during the window between two court orders requiring Airmont to inform the Government of such changes and which the Village never raised with the Government despite obvious reasons to do so—is highly disingenuous.[4]

Finally, for much the same reasons, any suggestion potentially left open by Airmont that the United States has also signed off in substance on the 2018 amendments is similarly without basis in fact. This point bears emphasis because Airmont takes pains to paint the new 2018 procedures as "nearly identical to the 2007 code," *id*. at 16, that the Village falsely asserts has been vetted previously by the Court and the Government. The Village has not made efforts at proactive consultation with the Government about proposed zoning changes since 2015, when the *Airmont II* consent decree expired, and certainly never made the 2018 amendments known to the United States. Although its review of these recent changes and their effects is ongoing, the Government notes that even at first blush, contrary to Airmont's contention that the 2018 code is "nearly identical" to the 2007 code, the new amendments have made significant changes to how and when residents of the Village may exercise their rights to apply for home synagogues, including: (1) deleting altogether a separate process for review of residential places of worship, (2) imposing a new cap on total floor area of any home synagogues, (3) drastically altering the application process by inserting an ill-defined committee with significant powers to control the pace of review, (4) more than doubling the minimum process time of 62 days even if and after an application is considered formalized, and (5) subjecting residents to potential criminal penalties for violating any of these provisions. *See supra*. These changes do not appear to be "nearly identical" to the 2007 amendments and certainly bear no resemblance to any version of the zoning code ever submitted to the Government or any court.

---

Airmont never raised at the time, and certainly did not flag in sending the link to the Code. Any suggestion that the transmittal and receipt of the web link to the entire zoning code constitutes a fair basis for the Village to represent that the United States has vetted the 2007 amendment is unreasonable.

[4] Plaintiffs allege that the 2007 code is unlawful not only on its face, but in the repeatedly delayed, cost-inducing, and contentious manner in which it has been applied, culminating with the Village's outright moratorium on all building applications in 2017. *See, e.g.*, First Amended Complaint [ECF No. 33] ¶¶ 44-57. Without opining on the merits of these allegations, on their face, they raise the kinds of self-evident concerns about the potential for abuse in Airmont's proposals for reviewing applications that motivated the Government's caution in proceeding only on a test-case fashion in 2000.

\* \* \*

Accordingly, to the extent that Airmont has made inaccurate and misleading assertions about the position or actions of the United States concerning the zoning code amendments at issue in this action, the Government respectfully refers the Court to the foregoing to correct the record and for a more comprehensive context of Airmont's history of non-compliance with anti-discrimination laws.

Thank you for your consideration.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

By:   /s/ Stephen Cha-Kim
    STEPHEN CHA-KIM
    Assistant United States Attorney
    Telephone: (212) 637-2768
    Facsimile: (212) 637-2702
    Email: stephen.cha-kim@usdoj.gov

cc:    Counsel of record (by ECF)