UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONGREGATION OF RIDNIK, RABBI MOISHE BERGER, CONGREGATION KOLLEL MEOR YOSEF, RABBI DAVID RIBIAT, CONGREGATION KHAL BOSTON, RABBI ABRAHAM HOROWITZ, and CHAIM CAHAN, <br><br> Plaintiffs, <br><br> -against- <br><br> VILLAGE OF AIRMONT, PHILIP GIGANTE, VILLAGE OF AIRMONT BOARD OF TRUSTEES, VILLAGE OF AIRMONT ZONING BOARD OF APPEALS, LAURIE DIFRANCESCO, BUILDING DEPARTMENT OF THE VILLAGE OF AIRMONT, LOUIS ZUMMO, PLANNING BOARD OF THE VILLAGE OF AIRMONT, COMMUNITY DESIGN REVIEW COMMITTEE, DAN KRAUSHAAR, EVE MANCUSO, STU TURNER, ADRIANA BELTRANI, and SHLOMO POMERANZ, <br><br> Defendants. | No. 7:18-cv-11533 <br><br> **DEMAND FOR JURY TRIAL** |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE DEFENDANTS' EXHIBITS, AND <u>REQUEST FOR ORAL ARGUMENT</u>[1]

---

[1] Pursuant to the Court's Individual Practice 3(E), Plaintiffs represent that a junior attorney will argue this Motion.

Dated:   New York, New York
            January 7, 2021

                              NORTON ROSE FULBRIGHT US LLP

                              By: */s/ Stephen C. Dillard*
                                   Stephen C. Dillard*
                                   D'Lesli M. Davis*
                                   Jordan Campbell
                                   1301 Avenue of the Americas
                                   New York, New York 10019-6022
                                   Tel: (212) 408-5100
                                   steve.dillard@nortonrosefulbright.com
                                   dlesli.davis@nortonrosefulbright.com
                                   Jordan.campbell@nortonrosefulbright.com

                                   Hiram S. Sasser III, Esq.*
                                   Keisha Russell, Esq.
                                   Lea Patterson, Esq.*
                                   FIRST LIBERTY INSTITUTE
                                   2001 W Plano Pkwy
                                   Suite 1600
                                   Plano, Texas 75075
                                   hsasser@firstliberty.org
                                   krussell@firstliberty.org
                                   lepatterson@firstliberty.org

                                   *Attorneys for Plaintiffs*
                                   * Admitted pro hac vice*

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ................................................................ 1

II.  INTRODUCTION ................................................................................ 2

III.  STANDARD OF REVIEW .................................................................... 2

IV.  ARGUMENTS AND AUTHORITIES.................................................... 3

    A.  Plaintiffs Have Standing For All Claims ........................................... 3

    B.  Defendants Continue to Falsely Represent The DOJ And Courts Approved The Challenged Zoning Provisions.......................................... 4

    C.  Defendants' Evidence Is Not Properly Before the Court at This Stage................ 6

        1.  *The Court may not take judicial notice of most of Defendants' evidence, and in any event may not do so for the truth of the matters asserted therein.* .......................................... 6

        2.  *The challenged evidence is not integral to the Complaint.*......................... 7

        3.  *Plaintiffs do not incorporate the challenged evidence by reference.*.......... 8

    D.  Individual Liability Is Appropriate Under RLUIPA and Section 1983 ................ 8

        1.  *Individual liability for Plaintiffs' RLUIPA claims is appropriate because RLUIPA explicitly permits individual liability*............................ 8

        2.  *Individual liability is also appropriate for Plaintiffs' Section 1983 claims* ................................................................. 9

    E.  Plaintiffs' As-Applied Claims Are Ripe ............................................. 15

    F.  Plaintiffs' Facial Challenges To The 2007 Code Are Not Moot ......................... 20

    G.  Plaintiffs Sufficiently Plead Claims Under All Provisions of RLUIPA ............. 21

        1.  *Plaintiffs plausibly allege a substantial burden due to zoning laws used to coerce Hasidic residents to change their behavior and forfeit their religious practices* ............................................... 21

        2.  *Plaintiffs plausibly allege a violation of RLUIPA's "Equal Terms" Provision* ..................................................................... 24

        3.  *Plaintiffs plausibly allege discrimination under RLUIPA* ...................... 26

        4.  *Plaintiffs plausibly allege a violation of RLUIPA's "Exclusions and Limits" Provision*................................................................ 27

    H.  Plaintiffs Plausibly Allege a "Free Exercise" Claim ......................................... 28

    I.  Plaintiffs Plausibly Allege a "Freedom of Association" Claim........................... 29

    J.  Plaintiffs Plausibly Allege a "Due Process" Claim ........................................... 29

        1.  *Plaintiffs properly allege a recognized property interest under applicable law*...................................................................... 30

        2.  *Plaintiffs properly allege conscience-shocking conduct.*......................... 31

# TABLE OF CONTENTS
(continued)

**Page**

       *3.*    *Plaintiffs plausibly allege a Procedural Due Process violation.............. 31*

  K.    Plaintiffs Plausibly Allege a Fair Housing Act Claim ........................................ 32

V.    CONCLUSION AND PRAYER ................................................................... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*33 Seminary LLC v. City of Binghamton,*
    869 F. Supp. 2d 282 (N.D.N.Y. 2012)......................................................................32

*Almonte v. City of Long Beach,*
    478 F.3d 100 (2d Cir. 2007)...................................................................................13

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999)...................................................................................................9

*Anderson v. Creighton,*
    483 U.S. 635 (1987)...............................................................................................14

*Bikur Cholim, Inc. v. Village of Suffern,*
    664 F. Supp. 2d 267 (S.D.N.Y. 2009)..............................................................22, 29

*Blue Rio LLC v. Thomas,*
    No. 17-cv-2015, 2017 WL 4863091 (S.D.N.Y. Oct. 26, 2017)............................14

*Boykin v. KeyCorp,*
    521 F.3d 202 (2d Cir. 2008)...................................................................................33

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n,*
    76 F.3d 183 (2d Cir. 2014)...................................................................................2, 3

*Chabad of Nova, Inc. v. City of Cooper City,*
    575 F. Supp. 2d 1280 (S.D. Fla. 2008) .................................................................28

*Charette v. Town of Oyster Bay,*
    159 F.3d 749 (2d Cir. 1998).....................................................................................4

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 U. S. 520 (1993)........................................................................................24, 29

*Cine SK8, Inc. v. Town of Henrietta,*
    507 F.3d 778 (2d Cir. 2007)...................................................................................30

*Congregation Rabbincial College of Tartikov, Inc. v. Village of Pomona, NY,*
    945 F.3d 83 (2d Cir. 2019)..............................................................................1, 3, 4

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
    915 F. Supp. 2d 574 (S.D.N.Y. 2013)..............................................22, 23, 24, 26

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY,*
    280 F. Supp. 3d 426 (S.D.N.Y. 2017)...............................................................3, 27

# TABLE OF AUTHORITIES
(continued)

**Page**

*Crowley v. Courville,*
    76 F.3d 47 (2d Cir. 1996) ..................................................................................31

*Cty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998)..........................................................................................31

*Dean v. Blumenthal,*
    577 F.3d 60 (2d Cir. 2009).................................................................................20

*DeMasi v. Benefico,*
    567 F. Supp.2d 449 (S.D.N.Y. 2008)..................................................................32

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010)..................................................................................8

*Doe No. 1 v. Putnam County,*
    344 F. Supp. 3d 518 (2d Cir. 2018) ....................................................................3

*In re Domestic Airline Travel Antitrust Litig.,*
    221 F. Supp. 3d 46 (D.D.C. 2016) .......................................................................7

*Dunes v. Monterey,*
    920 F.2d 1496 (9th Cir. 1990) ...........................................................................19

*E. Coast Novelty Co. v. City of New York,*
    781 F. Supp. 999, 1011 n.5 (S.D.N.Y. 1992)......................................................23

*Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,*
    466 U.S. 435 (1984)..........................................................................................20

*Fifth Ave. Presbyterian Church v. City of New York,*
    293 F.3d 570 (2d Cir. 2002)...............................................................................28

*Ford Motor Credit Co. v. N.Y.C. Police Dep't,*
    503 F.3d 186 (2d Cir. 2007)...............................................................................30

*Fortress Bible Church v. Feiner,*
    694 F.3d 208 (2d Cir. 2012)...............................................................21, 22, 23, 28

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000)...................................................................................6

*Glacken v. Inc. Vill. of Freeport,*
    Case No. 09-cv-4832, 2012 WL 894412 (E.D.N.Y. Mar. 15, 2012)................10, 11

*Glob. Network Comm's, Inc. v. City of New York,*
    458 F.3d 150 (2d Cir. 2006)..............................................................................2, 7

*Goel v. Bunge, Ltd.,*
    820 F.3d 554 (2d Cir. 2016)..............................................................................7, 8

# TABLE OF AUTHORITIES
(continued)

**Page**

*Goetz v. Windsor Cent. Sch. Dist.*,
   593 F. Supp. 526 (N.D.N.Y. 1984).................................................................11

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985)........................................................................6

*Hafer v. Melo*,
   502 U.S. 21 (1991)........................................................................................9

*Heckman v. Town of Hempstead*,
   568 Fed. App'x 41 (2d Cir. 2014).................................................................6

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
   101 F.3d 877 (2d Cir. 1996).........................................................................32

*Holmes v. Poskanzer*,
   342 Fed. App'x 651 (2d Cir. 2009)...............................................................15

*Hope v. Pelzer*,
   536 U.S. 730 (2002)......................................................................................14

*Huntington Branch, NAACP v. Town of Huntington*,
   844 F.2d 926 (2d Cir. 1988).........................................................................32

*Jackson v. Okaloosa Cty., Fla.*,
   21 F.3d 1531 (11th Cir. 1994)......................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)...................................................................6, 7, 8

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991).........................................................................6

*La Vigne v. Costco Wholesale Corp.*,
   284 F. Supp. 3d 496 (S.D.N.Y. 2018)..........................................................7

*Lamar Advert. of Penn, LLC v. Town of Orchard Park*,
   356 F.3d 365 (2d Cir. 2004).........................................................................4

*LeBlanc-Sternberg v. Fletcher*,
   67 F.3d 412 (2d Cir. 1995)..............................................................31, 33, 34

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982)......................................................................................32

*MacDonald v. Safir*,
   206 F.3d 183 (2d Cir. 2000).........................................................................4

*McKenna v. Wright*,
   386 F.3d 432 (2d Cir. 2004).........................................................................14

# TABLE OF AUTHORITIES
(continued)

Page

*Mhany Mgmt, Inc. v. Cty. of Nassau,*
819 F.3d 581 (2d Cir. 2016)................................................................33

*Midrash Sephardi, Inc. v. Town of Surfside,*
366 F.3d 1214 (11th Cir. 2004) ...........................................................28

*Monroe v. Pape,*
365 U.S. 167 (1961).............................................................................9

*Murphy v. New Milford Zoning Comm'n,*
402 F.3d 342 (2d Cir. 2005).................................................................17

*Norton v. Town of Islip,*
239 F. Supp. 2d 264 (E.D.N.Y. 2003) ................................................30

*Opulent Life Church v. City of Holly Springs Miss.,*
697 F.3d 279 (5th Cir. 2012) ...............................................................26

*Purdie v. Brown,*
No. 14-cv-8490, 2015 WL 6741875 (S.D.N.Y. Nov. 3, 2015)...............7

*R-Goshen LLC v. Village of Goshen,*
289 F. Supp. 2d 441 (S.D.N.Y. 2003).............................................10, 11

*Ramrattan v. Fischer,*
No. 13-cv-6890, 2015 WL 3604242 (S.D.N.Y. June 9, 2015) ...............9

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984).............................................................................29

*Rocky Point Drive-In, LLP v. Town of Brookhaven,*
21 N.Y.3d 729 (2013) ..........................................................................15

*Roman Catholic Bishop of Springfield v. City of Springfield,*
724 F.3d 78 (1st Cir. 2013)..................................................................17

*Rush v. Malin,*
No. 15-cv-3103, 2017 WL 2817080 (S.D.N.Y. June 29, 2017) ............9

*Schubert v. City of Rye,*
775 F. Supp. 2d 689 (S.D.N.Y. 2011)...................................................7

*Serrata v. Givens,*
No. 18-cv-2016, 2019 WL 1597297 (E.D.N.Y. Apr. 15, 2019) ........7, 8

*Sherman v. Town of Chester,*
752 F.3d 554 (2d Cir. 2014)......................................................17, 18, 19

*Stewart v. Jackson & Nash,*
976 F.2d 86 (2d Cir. 1992)...............................................................3, 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sudler v. City of N.Y.*,
689 F.3d 159 (2d Cir. 2012)............................................................13

*Sunrise Detox V, LLC v. City of White Plains*,
769 F.3d 118 (2d Cir. 2014)............................................................17

*Tabba v. Chertoff*,
509 F.3d 89 (2d Cir. 2007).............................................................29

*Tanzin v. Tanvir*,
141 S.Ct. 486 (2020).........................................................................9

*Texas Dep't of Hous. & Cmty Affairs v. Inclusive Cmty.'s Project, Inc.*,
576 U.S. 519, 538-541 (2015) ....................................................32, 33

*Third Church of Christ v. City of New York*,
626 F.3d 667 (2d Cir. 2010)............................................................25

*U.S. v. Bari*,
599 F.3d 176 (2d Cir. 2010).............................................................7

*U.S. v. Vill. of Airmont*,
No. 05-cv-05520 (S.D.N.Y. Sept. 9, 2005) (**Exh. 1-2**) ............................16, 19, 20

*U.S. v. Vill. of Airmont*,
No. 05-cv-5520 (S.D.N.Y. Nov. 12, 2008) (**Exh. 1-3**).........................16

*U.S. v. Village of Airmont*,
925 F. Supp. 160 (S.D.N.Y. 1996)..............................................14, 30, 32

*US v. Vill. of Airmont*,
No. 7:20-cv-10121 (S.D.N.Y. Dec. 2, 2020) ...........................................5

*US v. Vill. of Airmont*,
No. 7:20-cv-10121-NSR (S.D.N.Y. Dec. 2, 2020) ...................................6

*Vill. of Airmont v. U.S.*,
No. 98-cv-3801, 1999 WL 123384 (S.D.N.Y. Feb. 5, 1999) ...........................2, 14

*Warth v. Seldin*,
422 U.S. 490 (1975)...........................................................................4

*West v. Atkins*,
487 U.S. 42 (1988)............................................................................11

*Westchester Day Sch. v. Village of Mamaroneck*,
504 F.3d 338 (2d Cir. 2007)......................................................22, 23, 28, 29

*Williams v. City of New York*,
No. 14-cv-5123, 2015 WL 4461716 (S.D.N.Y. July 21, 2015)......................7

# TABLE OF AUTHORITIES
(continued)

**Page**

*Women's Med. Prof. Corp. v. Voinovich*,
  130 F.3d 187 (6th Cir. 1997) ................................................................4, 17

**Rules and Statutes**

24 C.F.R. § 100.500 ................................................................................33

42 U.S.C. § 2000cc ...................................................................8, 21, 24, 27

42 U.S.C. § 3604 ....................................................................................32

42 U.S.C § 3613 .....................................................................................33

# I. PRELIMINARY STATEMENT

On October 28, 2020, the Court gave the Parties a narrow assignment: address the applicability, if any, of the recent Second Circuit opinion in *Congregation Rabbincial College of Tartikov, Inc. v. Village of Pomona*, *NY*, 945 F.3d 83 (2d Cir. 2019) ("Tartikov IV") on the issue of standing. *Order* at 3 [ECF No. 59]. Defendants ignored the Court's specific instructions, and instead used them as an open invitation to request extensions of the time and page limitations to ultimately submit what amounts to an attempted do-over of its original Motion to Dismiss, which according to this Court was "full briefed on August 30, 2019." *Id.* at 2. Defendants again ignored the Court's specific instructions, and submitted a voluminous appendix filled with improper exhibits. *See Order* [ECF No. 61] (instructing Plaintiffs "to only submit exhibits that are subject to judicial notice and necessary for purposes of a motion to dismiss").

Defendants devote less than two (2) pages to the Court's specified topic. Not surprisingly, Defendants have little to say about the standing issue (which they never raised), as *Tartikov IV* is easily distinguishable from the instant case and offers them no support, as explained below. Instead, Defendants misuse the Court's assignment by devoting the overwhelming majority of the remaining pages to an untimely attempt to cover their tracks now that the United States Department of Justice has exposed the demonstrably false narrative upon which Defendants originally based their defenses.

Defendants urged this Court that the zoning codes at issue had been "federally-vetted and judicially approved" and received agency "imprimatur." Those representations, made repeatedly to the Court orally and in filings, were false. In reality, a federal court noted the U.S. Department

of Justice "***declined*** to give its imprimatur,"[2] and the Department of Justice has now sued Defendants for the exact Codes that Defendants represent to the Court the Department approves.

Plaintiffs first respond to the Court's directive on standing, and then respond to Defendants' latest Motion.

## II.  INTRODUCTION

Defendants' Motion to Dismiss (the "Motion") is, in reality, a premature Motion for Summary Judgment or, alternatively, a trial brief for subsequent litigation despite the fact that trial is before a jury. Defendants devote 17 pages to merits-based arguments, attaching 47 exhibits in a nearly 600-page appendix. A Rule 12(b)(6) Motion should determine whether a plaintiff has adequately pled causes of action, not argue defendants' liability based upon favorable characterizations of disputed facts. Defendants fail to address Plaintiffs' First Amended Complaint (the "Complaint"), and instead argue Plaintiffs' claims should be dismissed *en masse* because Defendants disagree.

## III.  STANDARD OF REVIEW

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Comm's, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original). "A claim is facially plausible when the complaint contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chabad Lubavitch of Litchfield Cty., Inc. v.*

---

[2] *Vill. of Airmont v. U.S.*, No. 98-cv-3801, 1999 WL 123384, at *2 (S.D.N.Y. Feb. 5, 1999) (emphasis added); *Pls' Mem. Opposing Defs' Mot. to Dismiss* at 3-4 [ECF No. 47].

*Litchfield Historic Dist. Comm'n*, 76 F.3d 183, 191 (2d Cir. 2014). The court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Id.* A motion fails "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992).

## IV.   ARGUMENTS AND AUTHORITIES

### A.      Plaintiffs Have Standing For All Claims.

Defendants argue that under *Tartikov IV*, 945 F.3d 83 (2d Cir. 2019), Plaintiffs do not have standing for any of their claims that pertain to the Moratorium and the 2018 Code. *Defs' Mot.* at 22-23. As an initial matter and for purposes of clarity, Plaintiffs do not seek relief in this case concerning the Moratorium, and thus Plaintiffs arguments seeking dismissal of claims for relief concerning the Moratorium are misplaced. Otherwise, though *Tartikov IV* has superficial factual similarities to the present case, two critical distinctions independently foreclose application of *Tartikov IV* here.

First, the challenged laws in *Tartikov IV* were facially neutral. *Tartikov IV*, 945 F.3d at 111.[3] But Plaintiffs here allege the challenged 2007 and 2018 Codes (the "Codes") are facially unconstitutional.[4]

For standing, it is well-settled that a plaintiff need not apply under a law or ordinance to bring a facial unconstitutional challenge. *Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 532 (2d Cir. 2018) ("[A] plaintiff 'need not have first sought and been denied any permit prior to filing

---

[3] *See also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 483 (S.D.N.Y. 2017), aff'd in part, rev'd in part and remanded, 945 F.3d 83 (2d Cir. 2019) ("As the Court has previously held, each of the Challenged Laws is facially neutral").

[4] *Pl's' Am. Complaint* at 18, ¶ 55 [ECF No. 33]; *id.* at 25-26, ¶ 75; *id.* at 65-66, ¶ 190; *id.* at 67, ¶ 193; *id.* at 68, ¶ 199; *id.* at 70, ¶ 210; *id.* at 71, ¶ 215; *id.*at 72-73, ¶¶ 224, 227; *id.* at 80-82.

---

a facial challenge.'") (quoting *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 374 (2d Cir. 2004); *MacDonald v. Safir*, 206 F.3d 183, 189 (2d Cir. 2000); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 757 (2d Cir. 1998). And "if a statute is unconstitutional on its face, the [government] may not enforce the statute under any circumstances." *Women's Med. Prof. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997).

Second, the *Tartikov IV* court held because plaintiffs never applied for anything under the challenged ordinances, any potential harm from the application of the facially neutral laws in *Tartikov IV* were purely "conjectural." *Tartikov IV*, 945 F.3d at 110. That is an entirely different factual scenario from the present case. Plaintiffs' pending applications were denied by passage of the 2018 Code.[5] There is no conjecture here—Plaintiffs submitted applications under the 2007 Code, those applications were denied, and Plaintiffs still cannot use their homes to practice their deeply held religious beliefs. Moreover, in several respects, the 2018 Code contains even further unlawful restrictions than the 2007 Code.[6] Plaintiffs have suffered an "injury in fact" through the Defendants' "invasion of [Plaintiffs'] legally protected interested" to practice their religion freely, which would be "redressed by a favorable judicial decision," and therefore have standing for all claims. *Tartikov IV*, 945 F.3d 83, 109 (2d Cir. 2019).

**B.     Defendants Continue to Falsely Represent The DOJ And Courts Approved The Challenged Zoning Provisions.**

In their original Motion to Dismiss, Defendants continually repeated the utterly false representations that the Codes were "federally-vetted and judicially approved," "implemented with the imprimatur of the Department of Justice," and "specifically approved by the Justice

---

[5] *Pl.'s Am. Complaint* at 21-22, ¶¶ 63-64 [ECF No. 33]; *id.* at 25, ¶ 75; *id*. at 63-64, ¶ 183; *see Warth v. Seldin*, 422 U.S. 490, 501 (1975) (in evaluating whether a party has standing, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

[6] *Pls' Am. Complaint* at 21-22, ¶¶ 63-64.

---

Department and the district court."[7]  Defendants then doubled-down on those false representations in their original Reply[8]—despite Plaintiffs conclusively demonstrating their falsity.[9] Defendants have now scrubbed some (but not all) of those representations after the United States Department of Justice (the "DOJ") submitted letters to the Court categorically rejecting any suggestion of "approval," and criticizing Airmont's "mischaracterizations." The DOJ again chastised the Village in another lawsuit in the Village's long  history of discrimination claims, filed in December 2020.[10]

Cresting the pinnacle of absurdity, Defendants continue to represent that "[t]he 'Residential Place of Worship' law is a creation of the federal courts and the Justice Department,"[11] including improper references to the "Amendments Stipulation," and continuing to imply approval of those Amendments. The DOJ already explicitly refuted Defendants' argument in its submitted letters:[12]

- [T]he Government wishes to refute any suggestion, either made expressly or by implication, that the United States has previously provided its imprimatur to, or otherwise endorsed the legality of, the 2007 and 2018 amendments to the Airmont zoning code at issue.  *DOJ Letter* at 1 [ECF No. 54] (internal citations omitted).

- Airmont created the challenged provisions of the Code without the approval of the DOJ. They are not the "creation of the federal courts and the justice Department," and any insinuation that the DOJ agreed to the Codes is "misleading at best.  *Id.* at 4.

Thus, Defendants continue to make categorically false representations to this Court—despite the fact that the DOJ repeatedly underscored the falsity of Defendants' misrepresentations, and is

---

[7] *See, e.g.*, *Defs' Mot. to Dismiss* at 5, 17, 20, 23 [ECF No. 46].

[8] *See Reply in Support of Defs' Mot. to Dismiss* at 1 [ECF No. 49] ( "DOJ agreed to the changes"; "subsequent negotiations with DOJ culminated in the *September 2000* Zoning Code Amendments Stipulation … by which the federal government agreed to certain proposed amendments to the Zoning Code.").

[9] *See Pls' Resp. to Defs' Mot. to Dismiss* at 1-4 [ECF No. 47].

[10] *Complaint* at ¶¶ 3, 12-14 [ECF No. 1], *US v. Vill. of Airmont*, No. 7:20-cv-10121 (S.D.N.Y. Dec. 2, 2020).

[11] *Defs' Mot.* at 2.

[12] *See generally* U.S. Dept. of Justice Letters [ECF Nos. 52 & 54]. Plaintiffs incorporate by reference the U.S. Department of Justice's letters to the Court, and on file in this matter, as if set forth fully herein. Plaintiffs briefed further details around the sordid origination of the challenged provisions of the Codes in its first Response to Defendants' Motion to Dismiss [ECF No. 47], to which Plaintiffs direct the Court's attention.

---

actively prosecuting its own claims against the Village over those exact Code provisions.[13]

### C.     Defendants' Evidence Is Not Properly Before the Court at This Stage.

A court may only consider documents or facts outside the complaint if they meet three narrow criteria: (1) documents subject to judicial notice; (2) documents integral to a complaint; or (3) documents incorporated in the complaint by reference. The majority of Defendants' proffered exhibits do not meet any of these criteria.[14]

Defendants' factual arguments and voluminous evidence should be stricken. *Goldman v. Belden*, 754 F.2d 1059, 1066-67 (2d Cir. 1985); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). The challenged exhibits should be excluded, or Defendants' Motion converted to one for summary judgment to afford Plaintiffs an opportunity to conduct discovery. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

#### 1.     The Court may not take judicial notice of most of Defendants' evidence, and in any event may not do so for the truth of the matters asserted therein.[15]

Courts may only consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014). Under Rule 201, the extrinsic evidence cannot be "subject to reasonable dispute," meaning it must be either (1) common knowledge; or (2) derived from an unimpeachable source.

---

[13] *Complaint* [ECF No. 1], *US v. Vill. of Airmont*, No. 7:20-cv-10121-NSR (S.D.N.Y. Dec. 2, 2020).

[14] Plaintiffs do not challenge Exhibits A-F, GG, and QQ-UU.

[15] Should the Court consider Defendants' exhibits, Plaintiffs request the Motion be converted to a Motion for Summary Judgment, and request an opportunity to confer on an appropriate scheduling order to conduct necessary discovery. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

---

*Id.*; *U.S. v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010). Evidence is "subject to reasonable dispute" if "there is a reasonable dispute as to what the [evidence] establishes." *Khoja*, 899 F.3d at 1000.

Defendants do not explain why their exhibits are subject to judicial notice.[16] *Purdie v. Brown*, No. 14-cv-8490, 2015 WL 6741875, at \*3 (S.D.N.Y. Nov. 3, 2015); *see In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 70 (D.D.C. 2016) ("Defendants do not set forth how each document at issue satisfies the requirements of Federal Rule of Evidence 201").

Even if judicial notice were appropriate, the Court may only review evidence "to determine what statements the documents contain, not for the truth of the matter asserted." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504-05 (S.D.N.Y. 2018). Similarly, if a court considers case law, "it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Comm's, Inc.*, 458 F.3d at 157.

### 2.      *The challenged evidence is not integral to the Complaint.*

A document is "integral" where plaintiffs "rel[y] upon its terms and effect" in drafting the complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *see Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, at \*4 (S.D.N.Y. July 21, 2015) (noting document is integral "when it is clear that the plaintiff relied on the document"). Ordinarily, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." *Goel*, 820 F.3d at 559.

Defendants still do not argue the exhibits are integral to the Complaint. Plaintiffs did not

---

[16] Defendants argue in a single footnote that one district court took judicial notice of Village board meeting notes. *Defs' Mot.* at 2, n.1. However, such records are not admissible. *See Serrata v. Givens*, No. 18-cv-2016, 2019 WL 1597297, at \*4 (E.D.N.Y. Apr. 15, 2019) ( "the defendant offers no argument as to how these documents are derived from an unimpeachable source, instead simply noting that some courts in this circuit have previously taken judicial notice of the same sort of documents.") (internal quotations and citations omitted).

rely upon the challenged exhibits, and the exception does not otherwise apply to these types of documents. *Id*.

### 3. *Plaintiffs do not incorporate the challenged evidence by reference.*

For extrinsic evidence to be incorporated by reference, the Complaint must also make "a clear, definite and substantial reference to the documents." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Courts caution against "overuse and improper application of … the incorporation-by-reference doctrine," which can allow "defendants [to] use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Defendants do not argue Plaintiffs incorporated the exhibits by reference. Most of the challenged exhibits are not even tangentially described in the Complaint,[17] and Plaintiffs make only passing reference to other exhibits.[18]

### D. **Individual Liability Is Appropriate Under RLUIPA and Section 1983.**

### 1. *Individual liability for Plaintiffs' RLUIPA claims is appropriate because RLUIPA explicitly permits individual liability.*

RLUIPA creates a private right of action for aggrieved individuals to sue the "government." 42 U.S.C. § 2000cc-2(a). The statute then defines "government" as:

> i.   a State, county, municipality, or other governmental entity created under the authority of a State;
>
> ii.  any branch, department, agency, instrumentality, or ***official*** of an entity listed in clause (i); and
>
> iii. ***any other person*** acting under color of State law.

42 U.S.C. § 2000cc-5(4)(A) (emphasis added). Defendants' argument that RLUIPA prohibits

---

[17] *Defs' Mot.* at Exhs. G, H, J, K, M-V, X-DD, II-MM, and OO.

[18] *Id.* at Exhs. EE, FF, HH, NN, and PP.

individual liability fails because it contradicts RLUIPA's express language.

Courts examining the plain text of the statute reach the same conclusion. *Ramrattan v. Fischer*, No. 13-cv-6890, 2015 WL 3604242, at *19 (S.D.N.Y. June 9, 2015); *Rush v. Malin*, No. 15-cv-3103, 2017 WL 2817080, at *5 (S.D.N.Y. June 29, 2017). Further, the individual Defendants are officials of a governmental entity created under the authority of the State and Village. Therefore, the individual Defendants acted under color of State law and are subject to individual liability.

Further, the U.S. Supreme Court holds that "appropriate relief against the government," as set forth in Section 2000cc-2(a) of RLUIPA, encompasses "at least the same forms of relief authorized by § 1983," and that "damages claims have always been available under § 1983 for clearly established violations of the First Amendment…." *Tanzin v. Tanvir*, 141 S.Ct. 486, 487 (2020). Thus, the law provides, "as one avenue for relief, a right to seek damages against Government employees," which includes "nonofficial acting under color of law." *Id.* at 487, 490.

### 2. *Individual liability is also appropriate for Plaintiffs' Section 1983 claims.*

Government officials are not insulated from personal liability for their official conduct. *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991). "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *see Tanzin v. Tanvir*, 141 S.Ct. 486, 490 (2020) ("[T]he term 'government' … includes … individuals who are nonofficials acting under color of law.") "[I]t is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" *Monroe v. Pape*, 365 U.S. 167, 184 (1961).

a.   **Plaintiffs plausibly allege "state action" to advance RLUIPA and Section 1983 Claims.**

The members of the Community Design Review Committee ("CDRC") derived their authority pursuant to State and Village laws and, pursuant to their authority under the Airmont Zoning Code, are personally involved in reviewing and evaluating building applications.[19] The individual Defendants undertook these responsibilities on behalf of the Village and personally harnessed their authority to deprive Plaintiffs of their constitutional rights.

To be clear, the individual Defendants are not private citizens voicing opinions to Village appointees and officials at public meetings. The individual Defendants <u>are</u> the Village officials, and are personally involved in drafting, approving, and enforcing discriminatory zoning laws. Clothed with authority in their appointed positions, the individual Defendants were responsible for determining whether residents' applications for approval of residential places of worship advanced, or were instead mired in unending "review" processes—a *de facto* rejection.

b.   **Because the individual Defendants are board or committee members, not independent professional consultants, they qualify as State actors.**

Defendants Zummo, Kraushaar, Turner, Beltrani, and Pomeranz[20] argue they are not "state actors and thus cannot be held liable under § 1983."[21] To make this argument, Defendants argue they were acting as mere "consultants" or "advisors."[22]

---

[19] *Defs' Mot.* at Exh. C, at §210:178; *Pls' Am. Complaint* at 5-6, ¶16 [ECF No. 33].

[20] *Defs' Mot.* at 19. Defendants do not identify or discuss Defendants Gigante, DiFrancesco, or Mancuso in Section I.B.1. of their Motion. Out of an abundance of caution, Plaintiffs assert that the analysis set forth herein applies equally to all individual Defendants, and the Complaint plausibly alleges claims against all individual Defendants for individual liability under Section 1983.

[21] *Id.* at 18.

[22] *Id.* (quoting *R-Goshen LLC v. Village of Goshen*, 289 F. Supp. 2d 441, 445 (S.D.N.Y. 2003)). Defendants also cite *Glacken v. Inc. Vill. of Freeport*, Case No. 09-cv-4832, 2012 WL 894412 (E.D.N.Y. Mar. 15, 2012). *Glacken* is immediately distinguishable because it involved an individual defendant who "never held an official position with the Village", but rather was independently retained as special counsel to represent the Village in lawsuits filed against the Village. *Id.* at *4-5.

---

The U.S. Supreme Court rejects the "proposition that no person acts under color of state law where he is exercising independent professional judgment." *West v. Atkins*, 487 U.S. 42, 52 at n.10 (1988). Indeed, the Supreme Court notes the exercise of professional judgment is not even "the primary test" in determining whether an individual acts under color of law. *Id.*

Defendants cite *R-Goshen*, noting a third-party, independent architectural consultant—hired and paid separately, and not a member of the Planning Board—was not a "state actor." *R-Goshen LLC v. Village of Goshen*, 289 F. Supp. 2d 441, 443 (S.D.N.Y. 2003). However, none of the individual Defendants were retained as independent "consultants." Further, each of the individual Defendants are sitting members of the boards and committees at issue in this litigation.[23]

Defendant Kraushaar cannot avoid liability because he happened to be an attorney or held a ministerial title of "Deputy Village Attorney."[24] The cases Defendants rely upon are immediately distinguishable as they involve private attorneys retained as outside litigation counsel, or were otherwise engaged to render purely legal advice. *Goetz v. Windsor Cent. Sch. Dist.*, 593 F. Supp. 526, 528-29 (N.D.N.Y. 1984) ("privately retained attorney" "acting in his professional capacity while representing his client"); *see Glacken v. Inc. Vill. of Freeport*, 2012 WL 894412, at *4-5 (E.D.N.Y. Mar. 15, 2012) (noting defendant "never held an official position with the Village"). Kraushaar was a sitting member of the CDRC, was personally involved in the discriminatory conduct at issue, had an instrumental role in authoring the discriminatory policies at issue in this litigation, and then blithely defended and enforced those policies despite their manifest constitutional flaws—all in furtherance of Airmont's unwritten policy of discrimination.[25]

---

[23] *Pls' Am. Complaint* at 4-6, ¶¶ 10, 12, 15, 17-21 [ECF No. 33].
[24] *Defs' Mot.* at 18.
[25] *Pls' Am. Complaint* at 27-28, ¶ 82 [ECF No. 33]; *id.* at 54, ¶ 155.

Lastly, Defendants argue in a single footnote the claims as to Defendants Gigante and DiFrancesco should be dismissed due to their positions "as a private citizen," or otherwise for lack of "'personal involvement' in a constitutional violation."[26]

Pursuant to her authority, DiFrancesco was responsible for preparing the discriminatory zoning laws at issue in this litigation. Together with Defendants Beltrani, Kraushnaar, and Turner, DiFrancesco defended, approved, and unequally enforced those laws.[27] DiFrancesco's public statements indicate that she, like other Preserve Airmont members, was focused on the "new population" of Hasidic residents moving to Airmont.[28] DiFrancesco mentioned the moratorium was necessary to control residential places of worship.[29] Both DiFrancesco's and Beltrani's statements as members of the Comprehensive Plan Update Committee demonstrate they ignored the burden on Hasidic residents caused by the size restrictions on religious spaces.[30]

Similarly, Defendant Gigante abused the power and authority of his mayoral office to dispatch an inspector to the Cahan residence to demand they immediately dismantle or re-locate a ceremonial religious shelter during its active use.[31] Gigante directed that inspector, and later Defendant Pomeranz, to conduct sham enforcements of Village codes for the specific purpose of discriminating against Hasidic residents and their religious practices.[32]

Defendant Mancuso, CDRC member and "Village Engineer," issued the unnecessary decision—after the site approval process had started—that Rabbi Ribiat must include a costly

---

[26] *Defs' Mot.* at 21, n. 13.

[27] *Pls' Am. Complaint* at 27-28, ¶¶ 78-82, 84.

[28] *Id* at 13, ¶ 41.

[29] *Id.* at 19, ¶ 56.

[30] *Id.* at 26-29, ¶¶ 76-85.

[31] *Id.* at 59, ¶ 168.

[32] *Id.* at 60-61, ¶¶ 170-71.

---

foundation, thereby pushing his application over the square foot limitations for expedited site approval.[33] Joining her, Defendant Pomeranz made additional demands not previously disclosed— for example, when he demanded that every window of the Rabbi's home be accessible by ground ladder.[34] Pomeranz also attempted pretextual inspections of the Rabbi's home and, when denied entry, rejected the Rabbi's plan.[35] Pomeranz and Zummo unlawfully refused to execute Rabbi Horowitz's certificate of occupancy though it had already been approved.[36]

### c.    The individual Defendants are not entitled to qualified immunity.

A qualified immunity defense does not bar Plaintiffs' claims seeking injunctive and declaratory relief against the individual Defendants in their official capacities. *See Sudler v. City of N.Y.*, 689 F.3d 159, 177 (2d Cir. 2012).

Further, Defendants fail to establish the individual Defendants are entitled to qualified immunity on Plaintiffs' claims for monetary damages because the law prohibiting the alleged religious discrimination is clearly established, and a reasonably competent public official should have known that his or her conduct would violate that law—particularly in light of the long and well-documented history of Airmont's discrimination against Hasidic residents.

Qualified immunity does not bar claims for knowing violations of constitutional rights. Qualified immunity applies only "(1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the officials' actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007).

---

[33] *Pls' Am. Complaint* at 33, ¶ 95 [ECF No. 33].

[34] *Id.* at 33, ¶ 96.

[35] *Id.* at 41-42, ¶ 117.

[36] *Id.* at 52, ¶ 150.

At all times, each individual Defendant had notice—by court orders, the DOJ, and prior

consent decrees—that targeting Hasidic residents violates the U.S. Constitution and other laws.[37]

*See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002) (concluding officials had "fair notice" conduct

was unlawful based on case law and DOJ report). Their repeated pattern of delaying and/or denying

Plaintiffs' applications (and other conduct) were not legitimate acts, but instead constituted

targeted discrimination against a group because of their religion.[38]

Defendants' argument that such acts were neutral attempts to enforce Village ordinances

fails. The ordinances themselves were borne out of religious animus, as evidenced by the text of

the ordinances, the Village's long history of discrimination, and the Village passing them under

cloak of secrecy without reporting to the DOJ.[39] *Vill. of Airmont*, 925 F. Supp. 160, 162 (S.D.N.Y.

1996); *Gov's Mot. for Sanctions* at 14 (Exh. 1-1). Because the individual Defendants knowingly

violated the Plaintiffs' constitutional rights, qualified immunity does not apply. *See Anderson v.

Creighton*, 483 U.S. 635, 638 (1987).

Defendants' argument they did not believe their conduct violated Plaintiffs' constitutional

rights cannot be discerned by the Court at this stage. *See Blue Rio LLC v. Thomas*, No. 17-cv-

2015, 2017 WL 4863091, at *7 (S.D.N.Y. Oct. 26, 2017) ("without the benefit of a fuller factual

record, the Court [could not] conclude whether [the officer] was objectively reasonable to believe

his actions did not violate such clearly established law"); *McKenna v. Wright*, 386 F.3d 432, 436

(2d Cir. 2004) ("[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion … must

accept the more stringent standard applicable to this procedural route."). "A plaintiff is entitled to

---

[37] *Pls' Am. Complaint* at 10-13, ¶¶ 34-42 [ECF No. 33].

[38] *Id.* at 14-16, ¶¶ 44-47 (the 2007 Code); *id.* at 20-22, ¶¶ 59-66 (the 2018 Code); *id.* at 24, ¶ 74; *id.* at 26-29, ¶¶ 76-85 (individual Defendants' statements and conduct).

[39] *Id.* at 12, ¶ 38; *id*. at 14-15, ¶ 44.

all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Holmes v. Poskanzer*, 342 Fed. App'x 651, 652 (2d Cir. 2009).

The facts and circumstances surrounding enforcement of the relevant ordinances, as alleged in the Complaint, demonstrate that a reasonably competent public official should have known that such actions violated Plaintiffs' constitutional rights—particularly where the individual Defendants were specifically warned their conduct was discriminatory and unconstitutional, yet proceeded to discriminate anyway.[40]

### E.    Plaintiffs' As-Applied Claims Are Ripe.

Defendants argue Plaintiffs' as-applied claims are unripe because Plaintiffs have not received a "final decision." First, Plaintiffs' applications under the 2007 Code were *de facto* denied when the Village enacted the 2018 Code. Second, a court in this District previously rejected the exact same arguments from Airmont. Third, all three of the recognized exceptions to the finality requirement apply in this case.

First, as alleged in the Complaint, the 2018 Code effectively terminated Plaintiffs' pending applications because it failed to include any grandfathering provision.[41] Plaintiffs were forced to start the permitting process anew, and thus their pending applications were effectively denied.[42] For this reason, the finality rule has been met. According to statements from the Defendants

---

[40] *Pls' Am. Complaint* at 26-29, ¶¶ 76-85 [ECF No. 33].

[41] *Id.* at 21, ¶ 63 ¶; *id.* at 25, ¶ 75.

[42] *Id.* at 19, ¶ 58; *id.* at 21, ¶ 63; *id.* at 67-68, ¶ 196; *id.* at 70, ¶ 209. In a single sentence, Defendants argue the Village's failure to include a grandfathering provision is of no consequence. *Defs' Mot.* at 27 (citing *Rocky Point Drive-In, LLP v. Town of Brookhaven*, 21 N.Y.3d 729, 736 (2013)). In *Rocky Point*, plaintiff submitted an application, amendments were passed, and subsequently *the pending application* was decided under the *amended* law. 21 N.Y.3d at 734-36. Contrary to *Rocky Point*, Defendants concluded Plaintiffs' pending applications are dead in the water and Plaintiffs must begin the process anew.

---

themselves, there is no further recourse available for those applications.[43]

Second, Airmont raised these same ripeness arguments to another court in this District, which rejected them. *Mem. Op. and Ord.* [ECF No. 21] at 7-9, *U.S. v. Vill. of Airmont*, No. 05-cv-5520 (S.D.N.Y. Nov. 12, 2008) (EXH. 1-3). In that case, Airmont argued the DOJ's claims were not ripe because Hasidic plaintiffs' building applications were rejected by the Planning Board, but they did not seek a variance. *Defs' Mot. to Dismiss* at 3 [ECF No. 4], *U.S. v. Vill. of Airmont*, No. 05-cv-05520 (S.D.N.Y. Sept. 9, 2005) (EXH. 1-2). The Code in place at the time prohibited applicants from seeking a variance from the Zoning Board without a referral from "an approved agency," but the Planning Board never referred the application further, and thus and because "the Congregation went as far as it could through Airmont's land use process." *Mem. Op. and Ord.* at 8 (citing prior Code § 210-158(C)). The court further reasoned the challenged code expressly permitted legal action where it provided "[a]ny person aggrieved by any decision of the Planning Board may apply to the Supreme Court of the State of New York for review…." *Id.* at 8-9 (citing prior Code § 210-94).

The same provisions remain intact, verbatim, in the Codes at issue. *Id.* at 8-9 (citing prior Code §§ 210-94, 210-158(C)); *compare Defs' Mot.* at Exh. C, §§ 210-94, 210-158(C); *Defs' Mot.* at Exh. D, §§ 210-94, 210-158(C). Plaintiffs were never able to obtain referral to the Zoning Board, there is no further recourse available to them, and therefore they meet the finality requirement.[44]

---

[43] Given that Defendants' Motion focuses exclusively on the Rabbi Plaintiffs and their respective Congregation Plaintiffs, this Response focuses on those arguments. However, out of an abundance of caution, Plaintiffs note that temporal considerations regarding Plaintiff Cahan's claims mean that he was never able to seek any administrative remedy, as the action against him took place on the eve of Yom Kippur, too late for him to seek any relief against the Building Inspector's actions. As such, any ripeness arguments against him are waived and inapplicable.

[44] Out of an abundance of caution, and as also discussed in Section IV.G.1. to the extent that Defendants argue Plaintiffs have not received a final decision from the Planning Board, Plaintiffs assert that is because the Planning Board engaged in conduct intentionally designed to avoid a final decision. *See Pls' Am. Complaint* at 64, ¶ 185 [ECF No. 33]. Thus, further action would be futile.

---

Third, even if the Court were to determine Plaintiffs do not meet the finality requirement, three exceptions exist to the finality rule: (1) a challenged ordinance is discriminatory on its face;[45] (2) plaintiffs have faced the "manipulation of a zoning process out of discriminatory animus to avoid a final decision"; or (3) where further appeal would be futile. *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014); *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014); *see Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349, 350 (2d Cir. 2005) ("[the] finality requirement is not mechanically applied" and "should be cautiously applied to [RLUIPA and First Amendment] claims."). All three exceptions apply here.

As to the first exception, the Codes at issue are facially discriminatory, and constitute targeted discrimination against Hasidic residents.[46] The 2007 Code was (1) born out of discriminatory animus;[47] (2) enacted in a manner to evade DOJ review (*see supra*, Section IV.B.); and (3) applied only to Hasidic Jews given its application to "residential houses of worship" and restrictions on Hasidic residents exclusively.[48] To be clear, the Village's targeting of its Hasidic residents is categorically different from more common land use challenges to facially neutral and generally applicable laws. *See Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 92 (1st Cir. 2013) ("the Ordinance is designed to apply only to the Church [plaintiff], unlike the neutral and generally applicable zoning or environmental ordinances that are almost always at issue when a regulatory takings claim is alleged.").

Further, as Defendants' concede, the 2018 Code is "nearly identical" or "effectively

---

[45] This is likely rooted in the sound principle that a facially unconstitutional or discriminatory law can never be constitutionally applied. *Women's Med. Prof. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997).

[46] *Pls' Am. Complaint* at 18, ¶ 55 [ECF No. 33]; *id.* at 14-15, ¶ 44; *id.* at 18, ¶ 55.

[47] *Id.* at 8-10, ¶¶ 27-33; *id.* at 12-14, ¶¶ 37-43.

[48] *Id.* at 14-15, ¶ 44; *id.* at 18, ¶ 55.

identical" to the 2007 Code.[49] Thus, the 2018 Code is no less facially discriminatory than the 2007

Code. Superficial terminology changes from "residential houses of worship" to "residential places

of assembly" yields no different result. Plaintiffs allege these changes were attempts to conceal an

unconstitutional law.[50] Thus, the first exception applies to as-applied claims under both Codes.[51]

The second and third exceptions equally apply. *See Sherman v. Town of Chester*, 752 F.3d

554, 561 (2d Cir. 2014) ( "[w]hile these two exceptions … are distinct concepts, … the analyses

for the two are the same."). The facts in *Sherman* (and the cases it relied on) are eerily similar to

those alleged in this case:

> For years, every time [plaintiff] submitted or was about to
> submit a proposal for [the project], the Town changed its zoning
> regulations, sending [plaintiff] back to the drawing board. It
> retroactively issued a six month moratorium on development that
> appears to have applied only to [plaintiff's] property. That six month
> moratorium was extended for another year … [and] Town officials
> also repeatedly asked [plaintiff] to resubmit studies and plans that
> had already been approved.

*Id.* at 562. The Second Circuit concluded "[t]he Town will likely never put up a brick wall in

between [plaintiff] and the finish line. Rather, the finish line will always be moved just one step

away until [plaintiff] collapses. In essence, the Town engaged in a war of attrition with [plaintiff]."

*Id.* at 563. "Seeking a final decision would be futile because the Town used … repetitive and unfair

procedures, thereby avoiding a final decision." *Id.*

---

[49] *Defs' Mot.* at 16, 26.

[50] *See Pls' Am. Complaint* at 20-21, ¶ 61 [ECF No. 33] (addressing the "more than three times per month" requirement); *id.* at 25-26, ¶ 75 (outlining facially unconstitutional nature of 2018 Code).

[51] As the Eleventh Circuit Court of Appeals has explained, the distinction between facial and as-applied challenges is a distinction without a difference. *See Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1541, n.16 (11th Cir. 1994). In *Jackson*, the defendants urged that the court treat plaintiffs' claims strictly as as-applied challenges and therefore apply the finality requirement. *Id.* The court explained that regardless of its designation, a challenge becomes a "facial" challenge because the plaintiffs claimed that the adoption of the challenged policy itself violated the FHA and was adopted with discriminatory purpose. *Id.* "Thus, the adoption of the Policy itself is claimed to have been illegal, and any and all applications of the Policy would be illegal." *Id.*

---

Similarly, in a case relied upon in *Sherman*, property owners repeatedly submitted development proposals recommended by city planners, only for those city planners to deny the proposals. *Dunes v. Monterey*, 920 F.2d 1496, 1502-03 (9th Cir. 1990). The the finality requirement did not apply because "[r]equiring [plaintiffs] to persist with this protracted application process to meet the final decision requirement would implicate the concerns about disjointed, repetitive, and unfair procedures." *Id.* at 1502-03, 1506.

As detailed throughout the Complaint, Plaintiffs each faced years of manipulation to the Village zoning laws ensuring they would never receive a final decision on applications.[52] Further, the Village refused to provide guidance as to how to correct applications.[53] Instead, every time Plaintiffs appeared before the CDRC, Planning Board, or the Building Inspector, the goal posts were shifted, and Plaintiffs were callously presented with new obstacles.[54] Each time, the Plaintiffs fixed their applications and re-submitted, only to be told to make more changes or start all over, and all while having to expend thousands of dollars in fees.[55] As a final blow, the Moratorium and the 2018 Code required Plaintiffs to begin their applications anew.[56]

Airmont's own unsuccessful prior litigation with the DOJ, which rejected Airmont's arguments, solidifies Plaintiffs' positions. *See Mem. Op. and Ord.* [ECF No. 21] at 8 n.3, *U.S. v. Vill. of Airmont*, No. 05-cv-05520 (S.D.N.Y. Nov. 12, 2008) (Exh. 1-3). The court rejected the same arguments the Village now repeats, explaining that even absent a final decision, the futility exception applies because "the Congregation would almost certainly be unable to establish the

---

[52] *Pls' Am. Complaint* at 3, ¶ 4 [ECF No. 33]; *id.* at 15-16, ¶¶ 45-47; *id.* at 16-17, ¶ 50; *id.* at 18, ¶ 53; *id.* at 21, ¶ 63; *id.* at 22-23, ¶¶ 65-67.

[53] *Id.* at 2-3, ¶ 2; *id.* at 15-16, ¶¶ 45-47; *id.* at 23, ¶ 67.

[54] *Id.* at 31-58, ¶ 142-165.

[55] *Id.* at 31-58, ¶ 142-165.

[56] *Id.* at 19, ¶ 58; *id.* at 21, ¶ 63; *id.* at 67-68, ¶ 196; *id.* at 70, ¶ 209.

factors that it would be required to show to obtain a use variance." *Id.* The court noted that under the prior Code, the plaintiff would have to show that "(1) '[t]he applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence'; (2) '[t]hat the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood'; and (3) '[t]hat the alleged hardship has not been self-created.'" *See Mem. Op. and Ord.* [ECF No. 21] at 8 n.3, *U.S. v. Vill. of Airmont*, No. 05-cv-05520 (S.D.N.Y. Nov. 12, 2008) (Exh. 1-3).

Again, those exact provisions are present—verbatim—in the Codes.[57] The only difference is the Codes <u>added</u> a requirement—"that the requested use variance, if granted, will not alter the essential character of the neighborhood."[58] If the futility exception applies to identical prior code provisions, then the exception equally applies under the even more compelling facts in this lawsuit.

## F.    Plaintiffs' Facial Challenges To The 2007 Code Are Not Moot.

Defendants incorrectly argue that the 2007 Code cannot be challenged because of the 2018 Code amendments.[59] If Plaintiffs sustained damages as the result of an unconstitutional law, Plaintiffs are entitled to challenge that law and recover damages. Otherwise, governments could insulate themselves by periodically amending unconstitutional laws—just as the Village attempts.

Claims for damages are not moot just because the cause of those damages are no longer present. *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks*, 466 U.S. 435, 442 (1984) ("as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot"); *Dean v. Blumenthal*, 577 F.3d 60, 66 (2d Cir. 2009) ("[Defendant]'s

---

[57] *Defs' Mot.* at Exh. C, at § 210-158(C)(2)(b); *id.* at Exh. D, at § 210(C)(2)(b).

[58] *Id.* at Exh. C, at § 210-158(C)(2)(b)(3); *id.* at Exh. D, at § 210-158(C)(2)(b)(3).

[59] *Id.* at 22-23.

withdrawal of the challenged policy does not render moot [Plaintiff]'s request relief").

### G.   Plaintiffs Sufficiently Plead Claims Under All Provisions of RLUIPA.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, protects religious congregations' right to assemble for worship by prohibiting land use regulations that (1) substantially burden religious exercise without satisfying strict scrutiny; (2) "treat[] a religious assembly or institution on less than equal terms with a nonreligious assembly or institution"; (3) "discriminate against any religious assembly or institution on the basis of its religion or religious denomination"; or (4) either "totally exclude[] religious assemblies" or "unreasonably limit[] religious assemblies, institutions, or structures" within a jurisdiction. 42 U.S.C. § 2000cc. Though Defendants need only violate one of these provisions to violate RLUIPA, Plaintiffs sufficiently pled claims under each of them.

#### 1.   *Plaintiffs plausibly allege a substantial burden due to zoning laws used to coerce Hasidic residents to change their behavior and forfeit their religious practices.*

To plead a *prima facie* claim under 42 U.S.C. § 2000cc(a), a complaint must allege that the relevant land use regulation, as implemented: (1) imposes a substantial burden, (2) on the religious exercise, (3) of a person, institution, or assembly. *Id.* at § 2000cc(a)(1); *Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 (2d Cir. 2012).[60] Defendants do not dispute Plaintiffs' Congregations and Rabbis are institutions and persons engage in the free exercise of religion while meeting in neighbors' homes for worship, or that Plaintiff Cahan was a person engaged in the free exercise of religion in possessing a sukkah on his property on the eve of Yom Kippur. Thus, Defendants do

---

[60] A "land use regulation" is "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." 42 U.S.C. § 2000cc-5(5). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," as well as "[t]he use, building, or conversion of real property for the purpose of religious exercise," *id.* § 2000cc-5(7).

not dispute Plaintiffs sufficiently pled the second and third criteria.[61]

As to the substantial burden element, Defendants make the unremarkable statement that RLUIPA allows zoning laws to exist. However, RLUIPA prohibits zoning laws that "coerce[] the religious institution to change its behavior." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 219 (2d Cir. 2012). A plaintiff may demonstrate a substantial burden "by alleging or proving that a municipality's zoning scheme imposes significant delay, uncertainty, and expense." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 632 (S.D.N.Y. 2013) ("Tartikov I"). The zoning action need not be an outright denial to constitute a "substantial burden." *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 290 (S.D.N.Y. 2009). Further, "a burden need not be found insuperable to be held substantial." *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).

Although Defendants argue that approval processes cannot qualify as a substantial burden,[62] Plaintiffs properly allege that, without approval from Defendants, no Village resident can worship inside their home with neighbors,[63] and thus Defendants coerced them to change their religious behavior. Plaintiffs' allege Defendants were fully aware that meeting in homes within walking distance is a central tenant of Hasidic Judaism[64] and that, despite this knowledge, Defendants concocted highly restrictive and expensive requirements for in-home worship, delayed the approval process, drained the Plaintiffs financially, and criminalized worship inside the home without the elusive approval of the Village (regardless of the number of attendees).[65] Plaintiffs

---

[61] *Defs' Mot.* at 25-27.

[62] *Id.* at 25.

[63] *Pls' Am. Complaint* at 18-19, ¶ 55 [ECF No. 33]; *id.* at 25-26, ¶ 75.

[64] *Id.* at 10-12, ¶¶ 34-36; *id.* at 27-28, ¶ 82; *id.* at 31-32, ¶¶ 89-91.

[65] *Id.* at 15-16, ¶¶ 46-49; *id.* at 17-81, ¶¶ 52-54.

allege Defendants' conduct forced them to either not meet in their homes according to their religious mandate, or to meet under threat of criminal prosecution, including heavy, daily fines.[66] Additionally, on the holiest day of the year for Hasidic Jews, Defendants forced Plaintiff Cahan to directly contradict his religious mandates by forcing him to deconstruct the sukkah that day.[67]

Plaintiffs' religious exercise can also be substantially burdened when zoning actions force their congregations to remain in facilities inadequate for their needs. *Fortress Bible Church v. Feiner*, 694 F.3d 208, 218-19 (2d Cir. 2012); *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 345 (2d Cir. 2007). "[Z]oning schemes which impose conditions on the use of the property, such as limitations on the size of the facilities to be used by the religious institution, can impose a substantial burden." *Tartikov I*, 915 F. Supp. 2d 574, 631 (S.D.N.Y. 2013).

Plaintiffs adequately plead that Defendants' size limitations on a Hasidic residents' worship in their own home is a substantial burden on religious exercise. For example, without such approval, Plaintiffs do not have a legal and adequate space to accommodate the number necessary to establish a quorum for group prayer.[68] Even more, the 2018 Code expressly refused to grandfather any applications, so Plaintiffs must start the approval process again.[69]

Similarly, banning mikvahs in residences forces Plaintiffs to remain in inadequate facilities. Defendants argue the 2018 Code does not ban mikvahs, but then cite the Village's own ordinances that explicitly prohibit public baths in residential places of worship ("assembly").[70]

---

[66] *Pls' Am. Complaint* at 18, ¶ 54 [ECF No. 33].

[67] *Id.* at 61-62, ¶¶ 172-173.

[68] *Id.* at 65, ¶ 188.

[69] *Id.* at 67-68, ¶ 196; *id.* at 70, ¶ 209; *id.* at 73, ¶ 225.

[70] *Defs' Mot.* at 27-28. Defendants' statement relating to the "public bath" provision in the 2018 code contains no ascertainable reasoning. *Id*. The court should deem it waived for insufficient briefing. *See, e.g.*, *E. Coast Novelty Co. v. City of New York*, 781 F. Supp. 999, 1011 n.5 (S.D.N.Y. 1992) ("The Defendants have failed to brief adequately whether other state law claims are cognizable. Absent a full briefing, the Court will not dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)] or grant summary judgment against these claims.").

Residents practicing Hasidic Judaism require mikvahs, a type of public bath, during worship. Banning mikvahs is thus a substantial burden on Plaintiffs' free exercise of religion.[71]

Defendants do not and cannot assert any compelling interest for substantially burdening religious exercise, much less a compelling interest that is narrowly tailored to be the least restrictive on religious exercise as possible. As Plaintiffs allege, Defendants' zoning laws for religious use are facially more restrictive than the relevant New York state building codes, proving that Defendants cannot meet the narrowly tailored requirement of strict scrutiny.[72] *See Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U. S. 520, 546 (1993) (noting that government hostility toward religious exercise must serve a compelling interest and be narrowly tailored).

### 2.    *Plaintiffs plausibly allege a violation of RLUIPA's "Equal Terms" Provision.*

RLUIPA's Equal Terms provision prohibits state actors from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). A land use regulation may violate this provision in three different ways: (1) it facially differentiates between religious and secular institutions or assemblies; (2) it is gerrymandered to place the burden solely on religious, as opposed to secular, institutions or assemblies; or (3) it is truly neutral but selectively enforced against religious institutions. *Tartikov I*, 915 F. Supp. 2d 574, 634 (S.D.N.Y. 2013). While the first and third categories involve an analysis of secular comparators, the second category requires only a showing that a facially neutral statute separates land uses in a way that "burdens almost only religious uses." *Id.* at 636 (internal quotations omitted).

To adequately plead a secular comparator, Plaintiffs need only provide a roughly similar

---

[71] *Pls' Am. Complaint* at 24, ¶ 72 [ECF No. 33].

[72] *Id.* at 30-31, ¶ 88.

example—"no court has held that the secular comparator's use need be identical to the religious entity's." *Third Church of Christ v. City of New York*, 626 F.3d 667, 671 (2d Cir. 2010). RLUIPA "is less concerned with whether formal differences may be found between religious and non-religious institutions—they almost always can—than with whether, in practical terms, secular and religious institutions are treated equally." *Id.* at 671. Rather, all that is necessary to find that Plaintiffs adequately pled a secular comparator is that the properties are "similarly situated for all functional intents and purposes relevant here." *Id.* at 668; *see id.* at 671 (rejecting the "idea that organizations at different stages of the same procedural process (as is the situation before us today) cannot be compared").

Plaintiffs plausibly allege at least seven secular comparators located in the same residential zoning districts that are similarly situated for the purposes of RLUIPA's Equal Terms provision. The reasonable inference is that these secular comparators are legal in Airmont and have benefitted from more favorable treatment in the land use review process. Each comparator had the opportunity to obtain certificates of occupancy, and were not required to adhere to the same space restrictions in the use of their facilities to gain approval.[73]

Additionally, the Equal Terms provision not only prohibits discrimination against religious uses but also *among* them.[74] The inclusion of Foster Church as a comparator further supports Plaintiffs' claim that the site approval process targeted the Hasidic community. That another religious sect received better treatment than Plaintiffs is a plausible allegation that Airmont violated the Equal Terms provision.

---

[73] *Pls' Am. Complaint* at 63, ¶ 180 [ECF No. 33].

[74] RLUIPA's legislative history states, "[s]ections [](b)(l) and (2) prohibit various forms of discrimination *against or among* religious land uses. These sections enforce the Free Exercise Clause rule against laws that burden religion and are not neutral and generally applicable." Joint Statement at S7776 (emphasis added).

Moreover, "an ordinance that expressly differentiates religious land uses from nonreligious land uses establishes a prima facie case for a facial Equal Terms Clause claim." *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 291 (5th Cir. 2012); *see Tartikov I*, 915 F. Supp. 2d 574, 636 (S.D.N.Y. 2013) (finding regulation that places burden almost solely upon religious institutions violates the Equal Terms provision of RLUIPA). The Complaint alleges that the 2007 Code established a specific category for "Residential Places of Worship."[75]

The 2007 Code mandated residents use only a small percentage or square footage of a home for religious purposes, but did not limit any other secular use the way it limited religious use.[76] The 2018 Code attempts to conceal that discrimination by re-labeling the category to "Residential Places of *Assembly*." However, Plaintiffs allege that this act was a disingenuous pretext, and the requirements under this new category are meant to regulate the Hasidic Jewish population's use of homes for religious purposes.[77]

### 3. Plaintiffs plausibly allege discrimination under RLUIPA.

For the same reasons outlined above, Defendants arguments that Plaintiffs' failed to properly allege treatment of non-religious comparators more favorably, and failed to allege an improper motive, also fail. Plaintiffs plausibly allege that at least seven secular comparators located in the same residential zoning districts are similarly situated for the purposes of RLUIPA's equal terms provision, and received better treatment in the site plan process.[78] Defendants' size restrictions imposed on home worship are also a glaring indication of Defendants' discrimination because Defendants do not impose such restrictions on any <u>other</u> uses in residential districts the

---

[75] *Pls' Am. Complaint* at 14-15, ¶ 44 [ECF No. 33].

[76] *Id.* at 30-31, ¶ 88; *id.* at 72, ¶ 217.

[77] *Id.* at 25, ¶ 75.

[78] *Id.* at 63, ¶ 180.

same way it restricts use by religious (especially Hasidic) residents.[79]

Further, the Complaint alleges Defendants were motivated by an improper discriminatory motive when drafting, enacting, and enforcing their zoning schemes—to prevent the use of Plaintiffs' homes as residential places of worship and discourage Hasidic Jewish worshippers from moving to Airmont.[80]

### 4.    *Plaintiffs plausibly allege a violation of RLUIPA's "Exclusions and Limits" Provision.*

Plaintiffs likewise sufficiently plead that the challenged land use regulations violate RLUIPA's Exclusions and Limits provision, which prohibits a land use regulation that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C §2000cc (b)(3)(B). Airmont unreasonably limits residential houses of worship because it does not provide an adequate "opportunity for new religious assemblies to locate." Further, Airmont "broadly limits" where religious entities can congregate, as set forth in the Complaint and discussed herein. *Congregation Rabbinical Coll. v. Village of Pomona*, 280 F. Supp. 3d 426, 487 (S.D.N.Y. 2017).

Village officials imposed a limitation on religious institutions because the Codes effectively require religious institutions and individuals to purchase more land than other uses. Although there is no intent requirement, Defendants instituted this burden with clear knowledge that the regulations would affect religious institutions this way.[81] To determine reasonableness, the court evaluates whether the zoning scheme provides an adequate "opportunity for new religious

---

[79] *Pls' Am. Complaint* at 30-31, ¶ 88 [ECF No. 33]; *id.* at 72, ¶ 217.

[80] *Id.* at 24, ¶ 74; *id*. at 58-59, ¶ 166; *id.* at 67, ¶ 195.

[81] *Id.* at 28, ¶ 84 (officials discuss that the Village's lot size requirements would force religious institutions to purchase two lots).

assemblies to locate." *Chabad of Nova, Inc. v. City of Cooper City*, 575 F. Supp. 2d 1280, 1289 (S.D. Fla. 2008) (finding heightened frontage requirement unreasonable limitation because effect was to require more property for religious purposes). "[R]eligious assemblies are not participating in the same marketplace when they are required to … obtain more frontage than any other non-residential uses in the same district." *Id.* Although the challenged codes did not expressly exclude Hasidic Jewish congregations, the allegations in the Complaint support the conclusion that the Codes unreasonably limited Hasidic assemblies, institutions, and structures by providing no reasonable opportunity for the congregations to locate in conformance with their religious practices. Accordingly, Plaintiffs allege a plausible claim for RLUIPA exclusions and limitations.

### H.    Plaintiffs Plausibly Allege a "Free Exercise" Claim.

For the same reasons pled in Plaintiffs RLUIPA claim, Plaintiffs sufficiently pled a First Amendment claim by alleging Airmont's actions "substantially burden the exercise of [Plaintiffs'] sincerely held religious beliefs." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 218-19 (2d Cir. 2012); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). Because "substantial burden is a term of art in the Supreme Court's free exercise jurisprudence," the Second Circuit "assume[s] that Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it" when enacting RLUIPA." *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *see also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir. 2004) ("The Supreme Court's definition of 'substantial burden' within its free exercise cases is instructive in determining what Congress understood 'substantial burden' to mean in RLUIPA."); *Fortress Bible Church*, 743 F. Supp. 2d 409, 512 (S.D.N.Y. 2010) ("[T]he substantial burden analysis under RLUIPA derives from First Amendment Free Exercise jurisprudence.... Accordingly, this Court's substantial burden analysis under RLUIPA applies with equal force to the analysis under the Free Exercise Clause."). In fact,

"RLUIPA's legislative history indicates that Congress intended the term substantial burden to be interpreted 'by reference to Supreme Court jurisprudence.'" *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) (citing 146 Cong. Rec. S7774, S7776 (2000)). Thus, because Plaintiffs' sufficiently pled that Airmont imposed a substantial burden under RLUIPA, they sufficiently pled that Airmont imposed a substantial burden upon their free exercise of religion.

Plaintiffs also sufficiently pled a valid claim because Defendants were hostile to Plaintiffs' religion. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 533 (invaliding a law under the Free Exercise Clause that was gerrymandered to prohibit a religious practice). Plaintiffs' allege that Airmont's officials created zoning laws targeting Hasidic religious worship.[82]

## I.     Plaintiffs Plausibly Allege a "Freedom of Association" Claim.

Plaintiffs plausibly allege a Freedom of Association claim because Plaintiffs allege Airmont's actions violated their "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 277 (S.D.N.Y. 2009). Airmont's violation is cognizable because "the interference with associational rights [was] direct and substantial or significant." *Tabba v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) (internal quotations omitted). Because Plaintiffs sufficiently pled Airmont imposed a substantial burden under RLUIPA and the Free Exercise Clause, they also sufficiently pled Airmont impermissibly imposed a substantial burden upon their First Amendment right of expressive association.

## J.     Plaintiffs Plausibly Allege a "Due Process" Claim.

A substantive due process inquiry entails two elements: (1) there is a valid property

---

[82] *Pls' Am. Complaint* at 14-15, ¶ 47 [ECF No. 33]; *id*. at 18, ¶ 55; *id*. at 20, ¶ 59; *id*. at 20-21, ¶ 61; *id*. at 24, ¶ 72.

interest; and (2) defendants infringed on that property right in an arbitrary or irrational manner. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007). A procedural due process inquiry also entails two elements: (1) whether there is a constitutionally protected property interest; and (2) whether the process afforded was adequate. *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007).

### 1.    *Plaintiffs properly allege a recognized property interest under applicable law.*

As an initial matter, while Defendants' arguments focus exclusively on a "recognized property interest" alleged as part of Plaintiffs' substantive due process claim, Defendants wholly failed to address, and do not dispute, the allegation that Defendants deprived Plaintiffs of their right to freedom of intimate association and freedom of expressive association. Additionally, "[i]n New York, it is well established that a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection." *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003). Lastly, a property interest deserving constitutional protection exists when an agency's discretion is so narrowly circumscribed that approval of an application is virtually assured.

Because Plaintiffs' pre-existing, fundamental right to pray or worship in their own homes—which Defendants now attempt to criminalize under its zoning laws—predated the enactment of the Codes, it is a vested right for purposes of Plaintiffs' substantive due process claims. But equally as important, a federal court previously stripped Airmont of its discretion to deny Hasidic residents the right to pray and worship in their own homes. *U.S. v. Village of Airmont*, 925 F. Supp. 160 (S.D.N.Y. 1996). At a minimum, Airmont's discretion had been "narrowly circumscribed." We know this because a federal court entered a permanent injunction against the Village enjoining it from applying its zoning laws in the precise manner Airmont now argues to the Court should be permitted. *Id.* at 161; *see Gov's Mot. for Sanctions* at 14 (EXH. 1-1) ("The

Village's proposed amendment would … return to the Village the kind of discretionary power in the area of home worship that the injunction was specifically designed to prevent.").

### 2.     Plaintiffs properly allege conscience-shocking conduct.

A zoning board's action is arbitrary or irrational "when the government acts with 'no legitimate reason for its decision.'" *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (internal citations omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" and therefore supports a substantive due process claim. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Plaintiffs allege the type of conscience-shocking behavior that gives rise to a Due Process claim, including targeting the religious practice of Hasidic residents and treating other uses more favorably in the zoning codes and in the land use process.[83] Though Village officials now labor to better conceal their discriminatory motives, they have at all times acted with the same explicit motivations which spawned the Village: "the reason of forming this village is to keep people like you out of this neighborhood." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 419 (2d Cir. 1995) (quoting sworn trial testimony). As Plaintiffs assert, that discriminatory intent poisons all conduct by the Village.[84]

### 3.     Plaintiffs plausibly allege a Procedural Due Process violation.

Defendants argue "[n]o § 1983 action lies where adequate post-deprivation procedures exists, such as an Article 78 proceeding."[85] However, because Defendants established state procedures that violate Plaintiffs' Due Process rights, Defendants' arguments fail. The cases upon

---

[83] *Pls' Am. Complaint* at 14-15, ¶ 47 [ECF No. 33]; *id*. at 18, ¶ 55; *id*. at 20, ¶ 59; *id*. at 20-21, ¶ 61; *id*. at 24, ¶ 72; *id*. at 63, ¶ 180.

[84] *Id.* at 8-10, ¶¶ 29-33; *id*.at 26-29, ¶¶ 76-85.

[85] *Defs' Mot.* at 34.

which Defendants rely are inapplicable as they address official conduct that was "random and unauthorized," rather than "established state procedures."

When reviewing alleged procedural due process violations, the Supreme Court distinguishes between: (a) claims based on established state procedures; and (b) claims based on random, unauthorized acts by state employees. *33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 300 (N.D.N.Y. 2012) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures does not, *ipso facto*, satisfy due process. *Hellenic Am. Neighborhood,* 101 F.3d at 877; *see also DeMasi v. Benefico*, 567 F. Supp.2d 449, 455 (S.D.N.Y. 2008) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-37 (1982)).

Plaintiffs allege they were deprived of their property and fundamental property interests due to established state procedures. Because such deprivation was foreseeable, some minimal, pre-termination proceeding was required. *DeMasi*, 567 F. Supp. 2d at 455. Plaintiffs sufficiently allege they were deprived of notice and hearing, and the types of "administrative remedies" or "post-deprivation procedures" casually referenced by Defendants do not warrant dismissal. *Id.*

### K.     Plaintiffs Plausibly Allege a Fair Housing Act Claim.

Airmont and its counsel know that the FHA applies to Plaintiffs' claims. *See Village of Airmont*, 925 F. Supp. 160, 161 (S.D.N.Y. 1996). The FHA makes it unlawful to "[t]o refuse to sell or rent ... or otherwise make unavailable or deny, a dwelling to any person because of ... religion...." 42 U.S.C. § 3604(a). Both the Supreme Court of the United States and the Second Circuit have applied the phrase "otherwise make unavailable" to include discriminatory zoning practices. *Texas Dep't of Hous. & Cmty Affairs v. Inclusive Cmty.'s Project, Inc.*, 576 U.S. 519, 538-541 (2015); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir.

1988); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995). Any "aggrieved person" may challenge discriminatory housing practices, which the FHA defines as "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C § 3613(a)(1)(A); *id.* at § 3602(i).

A law violates the FHA if it either (1) constitutes disparate treatment, or (2) is a facially neutral law that has a disparate impact on a protected class. 24 C.F.R. § 100.500; *Texas Dep't of Hous. & Cmty Affairs v. Inclusive Cmty.'s Project, Inc.*, 576 U.S. 519, 539-41 (2015). A *prima facie* case of disparate treatment is established when a plaintiff shows that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995). A *prima facie* case of disparate impact is established when a plaintiff shows the defendant's facially neutral acts or practices had a significantly adverse or disproportionate impact on a protected class. *Mhany Mgmt, Inc. v. Cty. of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016).[86]

Defendants violate the FHA when municipal officers enact a zoning code that can be interpreted in a discriminatory manner to exclude a protected class from their jurisdiction. *Leblanc-Sternberg*, 67 F.3d at 425. The Second Circuit ultimately held that "the evidence was sufficient to establish that Airmont violated the private plaintiffs' rights under the Fair Housing Act and the First Amendment" and that "the district court erred in granting the Village of Airmont judgment as a matter of law dismissing the private plaintiffs' FHA and civil rights claims." *Id.* at 424, 435.

---

[86] Both Second Circuit and the Code of Federal Regulations apply a three-part burden-shifting framework for disparate impact claims under the FHA. *Mhany Mgmt, Inc. v. Cty. of Nassau*, 819 F.3d at 617; 24 CFR § 100.500. However, at this stage in the action, the Plaintiff merely needs to plead facts sufficient to state a *prima facie* case. *See Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008).

For the Hasidic residents of Airmont, following the strict religious principles and beliefs of their faith is not optional. The Second Circuit has previously recognized this concept and applied it to the Village, holding it "adopted a zoning code that was intended to, and would be interpreted to, curtail home synagogues, thereby deterring Orthodox Jews from purchasing homes in many Airmont neighborhoods." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995). By forcing Plaintiffs into a perpetual state of administrative review,[87] Defendants denied Hasidic residents the right to freely exercise their religion in the Village.

The Compliant plausibly alleges this *de facto* denial and both disparate treatment and disparate impact. Disparate treatment is evident from the history of Airmont's incorporation, including the formation of the "Airmont Civic Association" and enactment of zoning laws that forbade "home synagogues" and otherwise prevent the practice of their religion.[88] Members of the Airmont Civic Association and the Airmont Board of Trustees made anti-Semitic comments evincing their goals of excluding Hasidic residents.[89] Additionally, the Village targeted Hasidic residents by attempting to prevent a boarding school for Hasidic males.[90] Airmont's discriminatory goals are more recently manifested in the 2007 and 2018 Zoning Codes.[91] Officials of the Village of Airmont used their positions to gain access to the homes of the Rabbi Plaintiffs and force the removal of Plaintiff Cahan's sukkah, a temporary tent-like structure used during Yom Kippur.[92]

---

[87] In 2016, Rabbi Horowitz was approved for a Certificate of Occupancy by the Planning Board. *Pls' Am. Complaint* at 51, ¶ 148. However, this approval was not the end of his difficulty. Upon turnover of personnel for the Village of Airmont, Rabbi Horowitz did not receive the Certificate and was forced to re-enter the approval process and navigate new issues raised by the CRDC and Planning Board before receiving the certificate. *Id.* at 52-58, ¶ 150 –165.

[88] *Pls' Am. Complaint* at 8-10, ¶¶ 30-33 [ECF No. 33].

[89] *Id.* at 9-10, ¶ 32.

[90] *Id.* at 12, ¶ 38.

[91] *Id.* at 26-29, ¶¶ 76-85.

[92] *Id.* at 48, ¶ 137; *id.* at 60-62 ¶¶ 169-176.

---

Discriminatory intent aside, the Compliant alleges a claim for disparate impact. The regulation of "Residential Places of Worship" in the 2007 Code and the "Residential Places of Assembly" in the 2018 Code discourage the practice of fundamental tenants of Hasidic Judaism--namely, access to a synagogue within walking distance for required congregational prayer.[93] Both Codes make it virtually impossible to receive approval to congregate and pray.[94] Both Codes criminalize inviting guests into one's home for prayer.[95] Moreover, Airmont now prohibits "public baths"[96] which, even if arguably facially neutral, effectively outlaws mikvahs,[97] which specifically targets Hasidic residents by denying them housing in the Village.[98] The individual Plaintiffs attempted compliance with the Codes, but were met with bureaucracy and shifting excuses.[99] Therefore, Plaintiffs allege a plausible claim for relief under a theory of disparate impact.

## V. <u>CONCLUSION AND PRAYER</u>

Plaintiffs' claims are ripe, and they have standing to bring them. To the extent Defendants' arguments have not previously been squarely rejected by a jury, a trial court, or the Second Circuit Court of Appeals, their arguments fail. Plaintiffs' Complaint outlines the Village's long history of discrimination against Hasidic residents Plaintiffs plausibly allege each of their claims. Defendants' exhibits G-FF and HH-SS should be stricken and not considered by the Court, and Defendants' Motion should be in all things denied.

---

[93] *Pls' Am. Complaint* at 8, ¶¶ 27-28 [ECF No. 33]; *id.* at 14-15, ¶ 44; *id.* at 20, ¶ 59.

[94] *Id.* at 14-15, ¶¶ 44-55; *id.* at 20-26, ¶¶ 59-75.

[95] *Pls' Am. Complaint* at 18, ¶ 54 [ECF No. 33]; *id.* 24, ¶ 73; *see supra*, Section IV.G.1.

[96] *Pls' Am. Complaint* at 24, ¶ 72.

[97] *Id.*

[98] *Id.*

[99] *Id.* at 31-42,¶ ¶ 89-121 (Kollel Ohr Yaakov and Rabbi Ribiat); *id.* at 43-49, ¶¶ 122-141 (Ridnik and Rabbi Berger); *id.* at 49-58, ¶¶ 142-165 (Khal Boston and Rabbi Horowitz).

---