UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONGREGATION OF RIDNIK, RABBI MOISHE BERGER, CONGREGATION KOLLEL MEOR YOSEF, RABBI DAVID RIBIAT, CONGREGATION KHAL BOSTON, RABBI ABRAHAM HOROWITZ, and CHAIM CAHAN

                        Plaintiffs,

    -against-

VILLAGE OF AIRMONT, PHILIP GIGANTE, VILLAGE OF AIRMONT BOARD OF TRUSTEES, VILLAGE OF AIRMONT ZONING BOARD OF APPEALS, LAURIE DIFRANCESCO, BUILDING DEPARTMENT OF THE VILLAGE OF AIRMONT, LOUIS ZUMMO, PLANNING BOARD OF THE VILLAGE OF ARIMONT, COMMUNITY DESIGN REVIEW COMMITTEE, DAN KRAUSHAAR, EVE MANCUSO, STU TURNER, and SHLOMO POMERANZ,

                        Defendants.

18 Civ. 11533 (NSR)(AEK)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

                                                   SOKOLOFF STERN LLP
                                                   *Attorneys for Defendants*
                                                   179 Westbury Avenue
                                                   Carle Place, New York 11514
                                                   (516) 334-4500
                                                   File No. 180175

*Of Counsel:*
  Brian S. Sokoloff
  Leo Dorfman
  Alexander J. Eleftherakis

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. ii

ARGUMENT ........................................................................................................................................ 1

    I.     THE CREATION OF THE RPW LAW ........................................................................... 1

    II.    NO STANDING FOR RELIGIOUS FREEDOM CHALLENGES TO 2018 CODE .. 2

    III.   THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS ............................... 3

    IV.   RLUIPA DOES NOT PERMIT INDIVIDUAL LIABILITY ..................................... 4

    V.    THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ............................ 4

    VI.   PLAINTIFFS' AS-APPLIED CLAIMS ARE UNRIPE ............................................. 5

        A.     No Final Decision ................................................................................................ 5

        B.     No Exception To The Ripeness Requirement Applies ........................................... 8

    VII.  FACIAL CHALLENGES TO THE 2007 CODE ARE MOOT ............................... 10

    VIII. NO RELIGIOUS FREEDOM CLAIMS (CLAIMS 1, 5, AND 6) ............................ 11

    IX.   NO DISCRIMINATION CLAIMS (CLAIMS 2, 3, 4 AND 8) .................................. 12

    X.    NO DUE PROCESS CLAIM (CLAIM 7) ................................................................. 13

    XI.   NO FHA CLAIM (CLAIM 9) ..................................................................................... 14

CONCLUSION .................................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Amid v. Vill. of Old Brookville*,
  2013 WL 527772 (E.D.N.Y. Feb. 7, 2013) ................................................................. 13

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*,
  111 F. Supp. 3d 459 (S.D.N.Y. 2015) ....................................................................... 9

*CMR D.N. Corp. v. City of Philadelphia*,
  703 F.3d 612 (3d Cir. 2013) ..................................................................................... 9

*Cong. Rab. Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*,
  945 F.3d 83 (2d Cir. 2019) ....................................................................................... 2

*Craft v. Vill. of Lake George New York*,
  39 F. Supp. 3d 229 (N.D.N.Y. 2014) ........................................................................ 11

*Dean v. Blumenthal*,
  577 F.3d 60 (2d Cir. 2009) ....................................................................................... 11

*Donovan Realty, LLC v. Davis*,
  2009 WL 1473479 (N.D.N.Y. May 27, 2009) .......................................................... 10

*Fighting Finest, Inc. v. Bratton*,
  95 F.3d 224 (2d Cir. 1996) ....................................................................................... 12

*Jackson v. Okaloosa Cty., Fla.*,
  21 F.3d 1531 (11th Cir. 1994) ................................................................................. 8

*K.D. ex rel Duncan v. White Plains Sch. Dist.*,
  921 F.Supp.2d 197 ................................................................................................... 13

*Lost Trail LLC v. Town of Weston*,
  289 F. App'x. 443 (2d Cir. 2008) .......................................................................... 9, 10

*Massi v. Flynn*,
  2005 WL 8159957 (S.D.N.Y. Feb. 3, 2005) ............................................................. 5

*Maybee v. Town of Newfield*,
  789 F. Supp. 86 (N.D.N.Y. 1992) ............................................................................. 14

*Mhany Management, Inc. v. County of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ..................................................................................... 15

*Murphy v. New Milford Zoning Comm'n*,
    402 F.3d 342 (2d Cir. 2005) .................................................................................................. 9

*Nenninger v. Vill. of Port Jefferson*,
    509 F. App'x 36 (2d Cir. 2013) ............................................................................................ 10

*Ramrattan v. Fischer*,
    2015 WL 3604242 (S.D.N.Y. June 9, 2015) ........................................................................ 4

*R-Goshen LLC v. Vill. of Goshen*,
    289 F. Supp. 2d 441 (S.D.N.Y. 2003) .................................................................................. 4

*Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*,
    128 F. Supp. 3d 566 (E.D.N.Y. 2015) ................................................................................ 13

*Rush v. Malin*,
    2017 WL 2817080 (S.D.N.Y. June 29, 2017) ...................................................................... 4

*Scaccia v. Stamp*,
    700 F. Supp. 2d 219 (N.D.N.Y. 2010) ................................................................................ 14

*Schubert v. City of Rye*,
    775 F. Supp. 2d 689 (S.D.N.Y. 2011) ............................................................................. 3, 4

*Serrata v. Givens*,
    2019 WL 1597297 (E.D.N.Y. Apr. 15, 2019) ...................................................................... 3

*Sheri Torah, Inc. v. Vill. of S. Blooming Grove*,
    2013 WL 1454953, n.1 (S.D.N.Y. Mar. 28, 2013) ............................................................... 3

*Sherman v. Town of Chester*,
    752 F.3d 554 (2d Cir. 2014) ............................................................................................ 9, 10

*Tabbaa v. Chertoff*,
    509 F.3d 89 (2d Cir. 2007) .................................................................................................. 12

*Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*,
    812 F. Supp. 2d 357 (S.D.N.Y. 2011) .................................................................................. 7

*U.S. v. Vill. of Airmont*,
    925 F. Supp. 160 (S.D.N.Y.) ................................................................................................ 1

*Washington v. Gonyea*,
    731 F.3d 143 (2d Cir. 2013) .................................................................................................. 4

iii

*Williamson Cty Reg'l Planning Com'n v. Hamilton Bank*,
  473 U.S. 172 (1985) ................................................................................................... 5, 6, 8, 9

**Statutes**

N.Y. Vill. Law § 7-725-a ................................................................................................... 14

### I. THE CREATION OF THE RPW LAW

The public history of the Village's RPW law is clear. Before 1996, it did not exist. *See* Ex. A. In 1996, a federal court ordered the Village to create the RPW use category. *U.S. v. Vill. of Airmont*, 925 F. Supp. 160, 161 (S.D.N.Y.). In 2000, the U.S. government "tentatively agreed to a draft (and unsigned) Stipulation and Order that provide[d] for certain amendments to the Airmont Zoning Code" which the Village would apply to a pending RPW application as a "test case" (the "Amendments Stipulation"). Ex. B at 2. The RPW application process in the 2007 Code was nearly identical to that in the Amendments Stipulation. *Compare* Ex. B at 7–9 *with* Ex. D at 1–3.

The Village recites this history for a specific and limited purpose: Plaintiffs vilify the Village simply for having the government-mandated RPW land-use category. *See* FAC, ¶¶ 24–38; ¶ 55 ("The 2007 Code was facially unconstitutional for … specifically referencing and singling out 'Residential Places of Worship,' …"). And they challenge as *facially invalid* the 2007 Code's RPW application process, which is nearly identical to the process in the Amendments Stipulation. Presumably, the federal courts and Government would not have ordered the Village to create the RPW category or agreed even to "test case" the language of the Amendments Stipulation—on which the 2007 and, in turn, 2018 Codes are based—if the provisions were *facially* unlawful.

The overheated accusations of "misrepresentation" lobbed at the Village are baseless and wrong. If their original papers caused any confusion, Defendants clarified the limit of their intended representations in a letter to the Court (ECF No. 55) and in their renewed motion papers. And *ad hominem* attacks aside, no one actually refutes the essential facts: i) the Village did not create the RPW use category; ii) the federal government agreed to the RPW application process set forth in the Amendments Stipulation, even if only on a test-case basis; and iii) the RPW application processes of the Amendments Stipulation and the 2007 Code are effectively identical.

1

## II. NO STANDING FOR RELIGIOUS FREEDOM CHALLENGES TO 2018 CODE

Plaintiffs do not respond to Defendants' specific standing argument, *i.e.*, after the Second Circuit's unambiguous and on-point holding in *Cong. Rab. Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019) ("*Tartikov IV*"), Plaintiffs lack standing for their Section 1983 free exercise, speech, and association and due process claims, RLUIPA substantial burden and exclusion-and-limits claims, and FHA claim relating to the 2018 Code.[1] Instead, they proclaim without specificity to "have standing for all claims" and purport to distinguish *Tartikov IV* on two bases: i) *Tartikov IV* involved "facially neutral" laws and ii) Plaintiffs' pending applications under the *2007 Code* were "denied by passage of the 2018 Code." Opp. at 2–3. Both arguments fail.

Plaintiffs' first distinction is irrelevant. Initially, conclusions aside, Plaintiffs identify no *facially* unconstitutional part of the 2018 Code. The law is neutral; it applies equally, for example, to all residents seeking to use their homes as spaces for public gathering or bathing. In any event, the Second Circuit in *Tartikov IV* did not differentiate facial challenges based on the nature of the challenged law, but on the nature of the "alleged injury." *Cong. Rab. Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83, 109 (2d Cir. 2019). For facial challenges based on alleged interference with "religious freedom," the Court found plaintiffs lack standing unless and until they engage in "conduct that would implicate or invoke the operation of the challenged zoning laws." *Id*. at 110. Here, Plaintiffs allege no such conduct concerning the 2018 Code.

Plaintiffs' second distinction is equally off base. There is no law, evidence, or other authority for the proposition that Ribiat's and Berger's[2] applications *under the 2007 Code* were "denied" when the Village amended its Code. And even if there were, Plaintiffs do not explain

---

[1] While this argument would apply to the moratorium, Plaintiffs concede they do not challenge that law. Opp. at 3.
[2] This second distinction does not apply to Horowitz; his application under the 2007 Code was *approved*.

how this would "implicate or invoke the operation of" any provision of the 2018 Code, much less in a way that interferes with their religious freedom. *Id*. at 109. They claim they "cannot use their homes to practice their deeply held religious beliefs," Opp. at 4, but no provision of the 2018 Code *on its face* is inflicting this alleged injury. If anything, their own refusal to implicate or invoke the 2018 Code is to blame.

### III. THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS

As previously stated, the Court may consider documents integral to or incorporated by reference in the complaint and public records, including public meeting minutes. *See* Br. at 2, n.1.

With no legal authority, Plaintiffs tell this Court to turn a blind eye to records necessary to determine the plausibility of their claims. Plaintiffs want to proceed to discovery on a carefully constructed fiction; the records contradict Plaintiffs' artfully plead allegations. Without these documents, the Court cannot even know how each plaintiff actually proposed to use his property, much less whether the Village's review was as "onerous" as Plaintiffs baselessly allege. Plaintiffs' claim that the minutes of meetings for their RPW applications are neither integral to nor incorporated by reference in the FAC is baffling. Opp. at 7–8. Plaintiffs do not simply "refer to and rely on these proceedings" in the FAC; these meetings "form the core" of Plaintiffs' as-applied claims (¶¶ 86–165). *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 695 (S.D.N.Y. 2011); *see also Sheri Torah, Inc. v. Vill. of S. Blooming Grove*, No. 10 CIV. 3762 LAP, 2013 WL 1454953, at *2, n.1 (S.D.N.Y. Mar. 28, 2013) (considering minutes of "meetings referenced" in complaint).

Plaintiffs cite no apt case showing the Court may not even take judicial notice of the public meeting minutes. Opp. at 6–7 (*citing Serrata v. Givens*, No. 1:18-CV-2016, 2019 WL 1597297, at *4 (E.D.N.Y. Apr. 15, 2019) (declining to take judicial notice of an "arrest report, 911-call report, and memo-book entry")). Nor do they make any effort to distinguish cases finding such minutes are matters of public record. *See* Br. at at 2, n.1 (citing cases). The Court may consider these

3

records at least for "the fact of the meetings and the actions taken by the relevant parties," if "not for the truth of any statements made during these proceedings." *Schubert*, 775 F. Supp. 2d at 695.

Indeed, while these minutes do undermine Plaintiffs' claims of animus and unfairness, their main purpose is to show "the actions taken by the relevant parties," to show the Village continued to review Plaintiffs' applications and that *no Plaintiff has received a final decision*.

### IV.   RLUIPA DOES NOT PERMIT INDIVIDUAL LIABILITY

Plaintiffs' insistence that "individual liability is appropriate under RLUIPA" contradicts unambiguous Second Circuit law: "RLUIPA does not create a private right of action against state officials in their individual capacities." *Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013). The district court cases they cite follow this binding precedent. *See Ramrattan v. Fischer*, No. 13 CIV. 6890 KPF, 2015 WL 3604242, at *9 (S.D.N.Y. June 9, 2015) ("RLUIPA does not afford a plaintiff a cause of action for money damages against individual defendants in either their official capacities or their individual capacities."); *Rush v. Malin*, No. 15 CV 3103 (VB), 2017 WL 2817080, at *5 (S.D.N.Y. June 29, 2017) (same). While those cases acknowledge that RLUIPA permits *official capacity* claims for injunctive relief, they provide no basis for *individual liability*.

### V.   THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

Plaintiffs do not plausibly claim any CDRC member or other Village consultant is capable of engaging in state action, so they state no RLUIPA or § 1983 claims against these individuals.

Plaintiffs claim *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 445 (S.D.N.Y. 2003) is distinguishable because that case involved a "third-party, independent architectural consultant—hired and paid separately" by the municipality. Opp. at 11. But that is *exactly* the function of CDRC consultants; there is no distinction. *See* Ex. C, § 210-174 (CDRC is an advisory panel of "Village departments, agency officials and consultants retained by the Village for the purpose of reviewing and evaluating applications or proposals and advising [Village] boards and

4

agencies.") The CDRC is not empowered—and does not purport—to take dispositive action on any application or to exercise any function vested by law in the PB or any other Village agency. Similarly, Plaintiffs' allegation that Deputy Village Attorney Kraushaar *advised* the Village in drafting of the 2018 Code (¶ 82) is not sufficient to make him a state actor. *See Massi v. Flynn*, No. 04 CIV. 6939 (CLB), 2005 WL 8159957, at *4 (S.D.N.Y. Feb. 3, 2005).

Plaintiffs' sole substantive argument against qualified immunity is that the Village officials "knowingly" acted with religious animus, but the FAC contains no plausible allegations to support this claim. Plaintiffs merely repeat their conclusory and false allegations that the challenged ordinances "were borne out of religious animus," despite the fact the Village enacted the RPW law under court order and based the 2007 Code on language the DOJ agreed to on a test-case basis. They do not plausibly allege any individual defendant actually acted out of religious animus.

## VI. PLAINTIFFS' AS-APPLIED CLAIMS ARE UNRIPE

Because no Plaintiff plausibly alleges he received a "final decision" on any land use application, all as-applied claims are unripe. Plaintiffs' argument that the PB "effectively" denied their applications when the Village Board adopted certain zoning amendments turns the ripeness analysis on its head. Opp. at 15. With no final decision to challenge, Plaintiffs contend they are exempt from the ripeness requirement on the basis of futility. Opp. at 17. Plaintiffs' allegations fall far short of satisfying the narrow futility exception.

### A. No Final Decision

Plaintiffs offer no legal support for the notion that the Village's amendment to the RPW law "effectively denied" their application such that it satisfied *Williamson* ripeness. And the Court need look no further than the *Williamson* decision itself to see this argument has no basis in law.

In *Williamson*, a developer obtained preliminary plat approval to develop a large tract of

land in 1973 when the maximum number of allowable units for development was 736. *Williamson Cty Reg'l Planning Com'n v. Hamilton Bank*, 473 U.S. 172, 177 (1985). In 1977, the county changed its zoning ordinance to reduce the allowable units. *Id*. at 178. Initially, the planning commission continued to apply the 1973 zoning, and it reapproved the preliminary plat in 1978. *Id*. However, in 1979, the commission decided the new zoning should govern any future reapproval applications. *Id*. at 178–79. When the developer sought reapproval based on density calculations using the 1973 ordinance, the Commission rejected the application for, in part, failure to comply with current density requirements. *Id*. The developer appealed to the board of zoning appeals ("BZA"), which determined the 1973 allowable density should apply. *Id*. at 180–81.

In 1981, a bank that acquired the property through foreclosure sought reapproval under the 1973 ordinance, but the commission declined to follow BZA opinion and disapproved the plat. *Id*. at 181–82. The bank filed suit under § 1983, arguing the commission should be estopped from denying approval. *Id*. at 182. After a jury found in the bank's favor and the Sixth Circuit Court of Appeals reversed, the bank sought Supreme Court review.

The Supreme Court reversed and dismissed the bank's claims as unripe because the bank "did not then seek variances that would have allowed it to develop the property according to its proposed plat." *Id*. at 188. The Supreme Court also rejected the bank's argument that "the Commission's denial of approval for [the bank]'s plat was equivalent to a denial of variances." *Id*. Because the bank had "not yet obtained a final decision regarding how it [would] be allowed to develop its property," its claims were unripe. *Id*. at 190.

*Williamson* makes clear Plaintiffs' "*de facto*" denial argument is bogus. Like the bank in *Williamson*, Plaintiffs purportedly seek approval under a now-expired zoning ordinance. But no Plaintiff has progressed even as far in the zoning process as that bank—whose claims the Supreme

Court still found to be unripe—because the Village has never denied any Plaintiff's application. Thus, even if the PB had denied any Plaintiff's application under the 2007 Code—which it has not (it *approved* one)—his claim would be unripe until he sought a variance allowing him "to develop [his] property according to [his] proposed" use. *Id*. at 188; *see* Ex. F, § 210-158(C).

Plaintiffs' conclusory claim that "there is no further recourse available" because they "were never able obtain referral to the [ZBA]" is unavailing. Opp. at 16. As an initial matter, this new allegation is improper because it appears nowhere in the FAC.[3] And although the Village Code authorizes the ZBA to hear variance applications "on referral of an applicant to the [ZBA] by an approving agency," no Plaintiff ever applied to the ZBA for a variance, much less sought a referral from the PB. Indeed, no Plaintiff *ever had the need* to seek a referral because no Plaintiff has ever received a denial of a land use application from which a variance would be necessary.

Plaintiffs' reference to *U.S. v. Airmont*, 05 Civ. 5520 (S.D.N.Y. Nov. 12, 2008) is a red herring. The case may suggest—incorrectly—that a PB denial alone is a "final decision" for ripeness purposes, but the Court need not consider whether *U.S. v. Airmont* got it right because it is readily distinguishable. That case involved a *denied* application. Campbell Decl. Ex. 1-3 at 3. Plaintiffs here allege no such denial. Whether a PB denial constitutes a final decision is irrelevant because *no Plaintiff alleges the PB denied his application*.

In any event, the court in that case was wrong to conclude *sua sponte* that PB denial alone is a "final decision." While variance applicants must first obtain a referral, the PB cannot make a referral unless and until the applicant requests one. The court's conclusion that "the Congregation went as far as it could through the [sic] Airmont's land use process when the PB denied its application" is an unfounded view of the Code that inexplicably requires the PB—rather than the

---

[3] *See Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 (S.D.N.Y. 2011) (a "complaint may not be amended simply by raising new facts in opposition to Defendants' motion").

7

applicant—to request a variance. Campbell Decl. Ex. 1-3 at 8. Reading the Code correctly, to ripen a claim, an applicant must, at the very least, apply to the PB for a referral and get rejected.

The *U.S. v. Airmont* court also erred when it found a PB denial is a "final decision" under the Village Code provision that permits applicants to challenge PB denial through an Article 78. While this provision may provide applicants another avenue to exhaust administrative remedies, it has no effect on their ability to apply for a variance. To comply with *Williamson*, an applicant who received a denial from the PB must still seek a variance in order "to obtain[] a final decision regarding how it [would] be allowed to develop its property." *Williamson*, 473 U.S. at 190.

### B. No Exception to the Ripeness Requirement Applies

With no final decision, Plaintiffs argue they are exempt from *Williamson*'s finality rule for two[4] reasons: i) the 2007 Code is allegedly facially invalid; and ii) pursuing a final decision would be "futile." But the facial-challenge exception to the ripeness requirement does not apply to Plaintiffs' as-applied claims. And Plaintiffs fall far short of satisfying the narrow futility exception.

A facial challenge does not just render an as-applied claim ripe for judicial review; there is no legal basis for this claim. The one case Plaintiffs rely on, *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531 (11th Cir. 1994), stands for no such proposition. That case involved a challenge to a provision that—unlike the 2007 Code—*had "never been applied"* to the plaintiff. *Id.* at 1541, n.16. The court rejected the defendant's attempt to characterize the plaintiff's claim as an as-applied challenge, noting "the adoption of the Policy itself is claimed to have been illegal." *Id*. The case says nothing of ripeness for a challenge to a zoning provision actually applied to an applicant.

Plaintiffs' argument not only lacks a basis in law; it is antithetical to *Williamson*. Indeed, "little would be left of the *Williamson County* finality rule if [courts] relaxed it so that a plaintiff

---

[4] Plaintiffs also claim the enforcement of allegedly "unfair procedures" is a third exception to the ripeness requirement separate from the futility doctrine, but they concede "the analyses for the two are the same." Opp. at 18.

8

could obtain damages and avoid the obligation to seek a [final decision] altogether by artfully pleading its case as a 'hybrid facial/as-applied' claim as opposed to what [it] really is—an as-applied claim." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 627 (3d Cir. 2013).

Nor can Plaintiff plausibly claim futility. The PB never "dug in its heels and made clear that all such applications will be denied." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005); *see also Lost Trail LLC v. Town of Weston*, 289 F. App'x. 443, 445 (2d Cir. 2008) (summary order). "Futility does not exist merely because public officials are hostile to the proposal at issue" (which the PB here is not). *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015) (citations omitted). It is a "high standard" met only "when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical." *Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014).

Stripped of the hyperbole and conclusory claims, no Plaintiff plausibly alleges the Village will inevitably deny his application to use his home as a gathering space; indeed, the Village already *approved* one application, and the other two applicants simply abandoned the process. Ribiat appeared before the PB three times between May 2017 and March 2018 to present plans that, according to his own engineers, required at least 11 variances. ¶ 103; Ex. O; Ex. S; Ex. T. He was on PB's April 26, 2018 meeting agenda, but Ribiat requested an adjournment and then never returned. Ex U. Berger started operating a RPW without site plan approval or a CO sometime in 2015. ¶ 124. He appeared at the PB *once* in June 2017 with plans to build a 3,080 sq.ft. house of worship. ¶¶ 124, 131; Ex. BB. The Building Inspector advised the proposed structure was too large to classify as a RPW. ¶ 134; Ex. EE. Despite his right to do so, Berger never appealed to the ZBA either for review or for a variance. Ex. F, § 210-154. Nor has he ever returned to the PB. In August 2015, the PB conditionally *approved* Horowitz's application for a RPW, which he operated since

2007 without site plan approval or a CO. ¶ 148; Ex. OO. A year later, he applied to the Building Inspector for a CO, which requires a site inspection. ¶ 119; Ex. F, § 210-149. In early 2017, the Fire Inspector informed Horowitz his residence failed the inspection. ¶ 156.

No Plaintiff plausibly alleges the Village has "dug in its heels" or "made clear" it would deny any application. *Compare Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 (2d Cir. 2013) (summary order) (no futility where plaintiffs never filed completed application and could not show "the application *inevitably* would be denied on its merits.") (emphasis added), *with Donovan Realty, LLC v. Davis*, No. 07-CV-905 (DRH), 2009 WL 1473479, at *4 (N.D.N.Y. May 27, 2009) (futility shown were planning board chairperson said "under no circumstances would the [PB] ever consider granting the Plaintiffs' request for a site plan amendment at their … property."). Conclusory claims of "hostility, delay and obstruction" do not show the Village "made clear that applications for relief will be denied." *Lost Trail LLC*, 289 F. App'x. at 445.

This case is nothing like *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014), a distant outlier in Second Circuit caselaw. After Sherman filed a subdivision application, the town allegedly a) changed its zoning code five times over a seven-year period, requiring new plans each time; b) enacted a moratorium; c) replaced its officials; d) required Sherman to resubmit studies already completed; and e) ordered Sherman to pay $65,000 in fees before he could obtain a hearing. *Id*. at 557. By the time Sherman sued, more than ten years had passed with no decision. *Id*. Here, the FAC presents nothing like the "labyrinth of red tape" alleged in *Sherman*. *Id*. at 557.

### VII. FACIAL CHALLENGES TO THE 2007 CODE ARE MOOT

Plaintiffs argue their *facial* challenge to the 2007 Code is not moot because they seek damages for alleged injuries the law caused *as-applied* to them. Opp. at 20. They miss the point. Any alleged compensatory damages would flow from Plaintiffs' as-applied challenge to the 2007

10

Code, not their facial challenge. As the cases *Plaintiffs* cite make clear, such damages claims do not revive moot facial challenges. *See Dean v. Blumenthal*, 577 F.3d 60, 65–66 (2d Cir. 2009) (finding "requested relief for a declaratory judgment, injunctive relief, and a cease-and-desist order are moot" but allowing damages claims "for *past* constitutional violation" to survive); *see also Craft v. Vill. of Lake George New York*, 39 F. Supp. 3d 229, 240 (N.D.N.Y. 2014) ("While the basic premise upon which [plaintiff] relies is correct, *i.e.,* a claim for damages, even nominal in nature, generally prevents mootness, it is also true that the remedy for a facial challenge is necessarily directed at the statute itself and *must* be injunctive and declaratory." (cite omitted)).

## VIII. NO RELIGIOUS FREEDOM CLAIMS (CLAIMS 1, 5, AND 6)

No Plaintiff plausibly alleges the Village substantially burdened or excluded his right to religious exercise or association. Stripped of the hyperbole, Plaintiffs' allegations amount to no more than frustration with a routine land use review procedure that codifies powers vested in a Village by New York State law to regulate land use. *See* Br. at 24–28.

Plaintiffs' substantial burden and free exercise/association claims boil down to a simple, misguided allegation: because three Village residents have become frustrated in their efforts to convert their single-family homes into public gathering spaces, the Village prevents *every* Hasidic resident from praying in his or her home. But hyperbole and false indignation aside, there is just no support for such a conclusion. *No provision of the Village Code prevents residents from gathering with their neighbors to pray.* And for those who want to establish dedicated spaces for larger gatherings—as Plaintiffs do—the Village provides an orderly approval process. The PB already *approved* one of the applications. And it stands ready and willing to continue its consideration of the other two, which Ribiat and Berger elected to terminate mid-process.

Plaintiffs repeat their bizarre claim that the 2018 Code prohibits mikvahs by providing "public baths, schools, and classrooms shall be deemed separate uses and are not permitted *in an*

11

*accessory* [RPA]." Vill. Code § 210-12.1(B)(5) (emphasis added); Opp. at 23. This is not a Village-wide ban on mikvahs; it merely defines RPA use as distinct from public baths, schools, and classrooms. Residents seeking to establish a public bath—a commercial use—cannot do so under the RPA provision and must look to other sections of the Code. Moreover, Plaintiffs do not allege the inability to have a mikvah *inside* a RPA would substantially burden religious practice.

The claim that the Village "forced Plaintiff Cahan to directly contradict his religious mandates by forcing him to deconstruct the sukkah" on "the holiest day of the year" is a gross misinterpretation of both the FAC and substantial-burden jurisprudence. Plaintiffs do not allege Cahan had to do any work on Yom Kippur. And if work he had to do *before* Yom Kippur to ensure the safety of his family home interfered with his travel plans for the holiday, any impact on such plans was only incidental. *See, e.g., Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) ("Mere incidental burdens on the right to associate do not violate the First Amendment; rather, '[t]o be cognizable, the interference with [plaintiffs'] associational rights must be "direct and substantial" or "significant."'" (quoting *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996)).

## IX. NO DISCRIMINATION CLAIMS (CLAIMS 2, 3, 4 AND 8)

Plaintiffs do not—and cannot—plausibly allege either the 2007 or 2018 Code treats other institutions—religious or secular—more favorably than RPA intended for use by Hasidic Jews. In reality, since 2007, the Village has applied its general site plan review procedure to all applications for residential gathering places. Ex. F, § 210-12.1(B)(1). If anything, both versions of the Code favor religious use, giving it priority in scheduling and in rendering decisions.[5]

Moreover, Plaintiffs fail to support their claim with *any* comparators the Village treated more favorably. They name eight properties but offer no factual allegations about their alleged

---

[5] *Id.*, § 210-12.1(B)(12); Ex. C, § 210-12.1(B)(14).

12

use. ¶ 180. They fall far short of alleging these properties were treated more favorably.[6]

Implicitly conceding the FAC's deficiency, Plaintiffs allege *new facts* in their opposition, claiming each comparator "had the opportunity to obtain [COO]s, and were not required to adhere to the same space restrictions in the use of their facilities to gain approval." Opp. at 25. However, "Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss."[7] Regardless, these paltry allegations do not save Plaintiffs' claims; they offer no detail on any restrictions the Village did or did not apply to these other properties. Plaintiffs do not and cannot claim these "comparators" applied under the RPW or RPA provisions, or that they are at all similar to Plaintiffs' properties in size, geography, or use.

Plaintiffs' argument that the 2007 Code violated RLUIPA's Equal Terms provision because it "established a specific category for [RPW]" strains credulity. A federal court ordered the Village to create this use category. If that order caused the Village to violate RLUIPA, the Village corrected any such violation in 2018 by creating the generally applicable RPA use.

The new claim that the 2007 and 2018 "Codes effectively require religious institutions and individuals to purchase more land than required for other uses" in violation of RLUIPA's Exclusions and Limits provision is not based in fact, alleged or otherwise. Opp. at 27. The Village has no such requirement. Since negotiating the Amendments Stipulation in 2000, the Village has merely regulated the size and safety of group gathering spaces *accessory to a single-family home*.

## X.  NO DUE PROCESS CLAIM (CLAIM 7)

Plaintiffs' due process claims fail because no Plaintiff can allege the existence—much less

---

[6] *See Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 588 (E.D.N.Y. 2015); *Amid v. Vill. of Old Brookville*, No. CV 11-3800, 2013 WL 527772, at *6 (E.D.N.Y. Feb. 7, 2013). "a plaintiff [who] claims to have been treated unfairly in a zoning/building context … must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged.")
[7] *K.D. ex rel Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 209 n. 8 (S.D.N.Y.2013) (citing cases).

13

the deprivation of—a protectable property interest. Plaintiffs do not contest that the PB has broad discretion to decide site plan applications or that the issuance of a CO is a matter of discretion for the Building Inspector. *See* Ex. F, § 210-74(B)(6); N.Y. Vill. Law § 7-725-a; Ex. F, § 210-149.

Plaintiffs' argument that their "pre-existing, fundamental right to pray" constitutes a prior nonconforming use under New York law is confusing and, at best, misguided. Opp. at 30. A prior nonconforming use occurs when land is used legally for a particular purpose and then a zoning law is enacted which explicitly *prohibits* that use. *See, e.g., Maybee v. Town of Newfield*, 789 F. Supp. 86, 88 (N.D.N.Y. 1992). There are no such allegations here; the concept is misapplied.

Plaintiffs also fail to plead the requisite conscience-shocking conduct to support a substantive due process claim. In their opposition, Plaintiffs merely repeat their baseless claims of animus and alleged preferential treatment of "other uses." Opp. at 31. Such paltry claims are not sufficient to plead a due process claim. *See, e.g., Scaccia v. Stamp*, 700 F. Supp. 2d 219, 240–41 (N.D.N.Y. 2010), *aff'd*, 447 F. App'x 267 (2d Cir. 2012) (dismissing substantive due process claim supported only by "vague and conclusory insinuations of defendants' personal animus.")

No Plaintiff pleads a procedural due process claim because no Plaintiff alleges the Village deprived it of either notice or an opportunity to be heard. Again, Plaintiffs' offer only the most conclusory treatment: "Plaintiffs sufficiently allege they were deprived of notice and a hearing." Opp. at 32. They utterly fail to articulate what extant property interest the Village deprived them of, much less the type of notice and hearing they were allegedly entitled to.

## XI. NO FHA CLAIM (CLAIM 9)

No Plaintiff states a FHA disparate treatment claim because none sought—much less was denied—housing. Nor can any Plaintiff state a plausible FHA disparate impact claim because they fail to allege the Zoning Code results in "a significantly adverse or disproportionate impact on

persons of a particular type produced by the defendant's facially neutral acts or practices." *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016).

Plaintiffs rely heavily on the Second Circuit's 1996 ruling that the Village violated the FHA. Opp. at 32–33. However, that ruling predates the RPW law. Indeed, the court ordered the creation of the RPW law *to address* the FHA violations. Plaintiffs' attempt to equate a prior version of the Code, which did not allow residents to use their homes for public gathering, with the 2007 and 2018 Codes, which expressly *permit* such use, is simply not plausible. Both the 2007 and 2018 Codes permit RPW, and Plaintiffs fail to plausibly allege the Village's enforcement of the Code has resulted in "a significantly adverse or disproportionate impact on persons of a particular type." *Mhany Management, Inc.*, 819 F.3d at 617.

Plaintiffs repeat that "Horowitz was approved for a [CO] by the [PB]" to claim the Village has forced him "into a perpetual state of administrative review." Opp. at 34 n.87. But the PB does not issue COs; the Building Inspector does. *See* Ex. F, § 210-149. Horowitz does not allege Building Inspector denied his CO application, much less that appealed any such denial to the ZBA.

## CONCLUSION

Defendants respectfully request this Court grant their motion and dismiss the FAC in its entirety with such other relief as this Court may deem just, equitable, and proper.

Dated: Carle Place, New York
       January 21, 2021

                                                    SOKOLOFF STERN LLP
                                                    *Attorneys for Defendants*

                                                    Brian S. Sokoloff
                                                    Leo Dorfman
                                                    Alexander J. Eleftherakis
                                                    179 Westbury Avenue
                                                    Carle Place, New York 11514
                                                    (516) 334-4500